# FOR PUBLICATION



**FILED**
Mar 31 2014, 8:06 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ANDREA L. CIOBANU**
**ALEX BEEMAN**
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JONATHAN T. FEAVEL**
Vincennes, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DUSTIN LEE JARRELL,           )
                              )
   Appellant-Respondent,      )
                              )
      vs.                  )    No. 42A01-1308-DR-381
                              )
BILLIE JO JARRELL,            )
                              )
   Appellee-Petitioner.       )

APPEAL FROM THE KNOX SUPERIOR COURT
The Honorable Jim R. Osborne, Judge
Cause No. 42D02-1008-DR-66

**March 31, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Respondent, Dustin Lee Jarrell (Father), appeals the trial court's Order modifying the custody of his minor child, G.J., in favor of Appellee-Petitioner, Billie Jo Jarrell (Mother).

We affirm.

## ISSUES

Father raises three issues on appeal, which we restate as the following:

(1) Whether the trial court erred by failing to consider the proper statutory factors following Father's objection to Mother's relocation;

(2) Whether the trial court erred by modifying custody without finding a substantial change in circumstances; and

(3) Whether the trial court erred in concluding that it is in G.J.'s best interests to award physical custody to Mother.

## FACTS AND PROCEDURAL HISTORY[1]

On September 6, 2003, Father and Mother were married and established their home in Vincennes, Indiana. Father owns a motorsport retail and repair business, and Mother is a registered nurse. Father has two children and Mother has one child from previous relationships, and on January 7, 2008, Mother gave birth to G.J., the couple's only child together. For the first two years of G.J.'s life, Father was a stay-at-home dad. After almost

[1] An oral argument for this case was held on March 4, 2014 at the court of appeals courtroom in Indianapolis, Indiana. We would like to commend the attorneys for their excellent advocacy.

seven years of marriage, on August 20, 2010, Mother filed a petition to dissolve the marriage. On January 4, 2011, the trial court entered a Decree of Dissolution and adopted the Dissolution Settlement Agreement reached by Father and Mother, which included an arrangement to share joint physical and legal custody of G.J. Per the custody order, Father and Mother alternated physical custody of G.J. on a weekly basis. Because the parents agreed to pay all costs associated with G.J.'s care while in that parent's custody and equally share educational and extra-curricular expenses, no child support order was entered.

In May of 2011, Mother quit her nursing job in Vincennes and relocated to Carterville, Illinois to reside with her fiancé (Fiancé). Carterville is approximately 180 miles and a three-hour drive from Vincennes. On December 28, 2011, Mother began a new nursing job in Carterville. For nearly two years following Mother's relocation, Father and Mother maintained their alternating custody arrangement, meeting in a city halfway between Vincennes and Carterville to exchange G.J. each week.

On March 18, 2013, Father filed a petition with the trial court requesting modification of the custody order. In his petition, Father stated that G.J. was set to begin kindergarten in August of 2013, and the weekly custody arrangement would "be impossible to perform because of the change of residency" by Mother. (Appellant's App. p. 48). Noting that Mother had failed to provide statutorily required notice prior to moving to Carterville, Father asserted that Mother's relocation "is a substantial and continuing change of circumstances that causes the [trial] [c]ourt's Orders as to the custody, visitation/parenting time and support to be unreasonable and therefore in need of modification." (Appellant's App. pp. 47-48).

On July 31, 2013, the trial court held an evidentiary hearing on Father's modification petition. On this same day, the trial court conducted an *in-camera* interview of G.J., off the record and outside the presence of parties or counsel. On August 15, 2013, the trial court adopted Mother's Proposed Findings of Fact and Conclusions of Law as its final judgment, maintaining the initial decree of joint legal custody, but granting sole physical custody to Mother. Father was awarded parenting time from 8:00 P.M. Friday through 6:00 P.M. Sunday for the first three weekends of each month, as well as nearly the entirety of G.J.'s summer break. The trial court concluded:

> That after consideration of the testimony of the parties, the information provided to this [c]ourt by the child in the [i]n-[c]amera interview, the exhibits provided to this [c]ourt, and the necessary statutory factors, the [c]ourt determines that the best interests of the child are served most completely through an award of physical custody to [Mother]. The [c]ourt specifically notes that the best interests of the child are served most fully through this award of physical custody as the child will benefit educationally from attentiveness of [Mother] as has been shown to the [c]ourt through testimony and exhibits.

(Appellant's App. p. 73).

Father now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

In this case, the trial court entered specific Findings of Fact and Conclusions of Law in its Order modifying custody. Pursuant to Indiana Trial Rule 52(A), our court will "not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." *D.C. v. J.A.C.*, 977 N.E.2d 951, 953 (Ind. 2012). Considering only the evidence most favorable to the trial

4

court's judgment and all reasonable inferences derived therefrom, we will find clear error only if the evidence, either directly or by inference, fails to support the findings, or if the findings fail to support the conclusions. *Paternity of X.A.X. v. S.K.*, 928 N.E.2d 222, 224 (Ind. Ct. App. 2010), *trans. denied*.

In addition, there is a well-established preference in Indiana "for granting latitude and deference to our trial judges in family law matters." *Swadner v. Swadner*, 897 N.E.2d 966, 971 (Ind. Ct. App. 2008) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). "[A]ppellate courts 'are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *D.C.*, 977 N.E.2d at 956-57 (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)). Our State's courts have long emphasized a concern that there be finality in matters concerning child custody. *Baxendale v. Raich*, 878 N.E.2d 1252, 1258 (Ind. 2008). "Modification of custody is an area committed to the sound discretion of the trial court, and we are constrained to neither reweigh evidence nor judge the credibility of witnesses." *Joe v. Lebow*, 670 N.E.2d 9, 23 (Ind. Ct. App. 1996).

II. *Relocation and Custody Statutes*

A. *Relocation Factors Versus Best Interests Factors*

Father claims that the trial court erred by failing to evaluate the proper statutory factors for modifying a custody order. Indiana Code chapter 31-17-2.2 (the Relocation Statute) provides that when a party moves to modify custody in response to the proposed

relocation of the other parent, the trial court must take these factors (the Relocation Factors) into consideration:

(1) The distance involved in the proposed change of residence.
(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time . . . .
(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time . . . , including consideration of the financial circumstances of the parties.
(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.
(5) The reasons provided by the:
    (A) relocating individual for seeking relocation; and
    (B) nonrelocating parent for opposing the relocation of the child.
(6) Other factors affecting the best interest of the child.

Ind. Code § 31-17-2.2-1(b). A trial court may "award reasonable attorney's fees for a motion filed" pursuant to the Relocation Statute. I.C. § 31-17-2.2-1(c).

In its Conclusions of Law, the trial court stated that it considered the Relocation Factors in ordering Mother to pay half of Father's attorney's fees. Specifically, the trial court mentioned Mother's failure to file proper notice of her proposed relocation and concluded that "it was [Mother's] move from Vincennes . . . that put the ball in motion for [the] hearing at hand." (Appellant's App. p. 11). However, in awarding sole physical custody of G.J. to Mother, the trial court stated "[t]hat contested matters of child custody are governed by the provisions of [Indiana Code section 31-17-2-8]." (Appellant's App. p. 13). Under this provision, a trial court must make a determination of custody based on the best interests of the child, which entails a consideration of "all relevant factors" (the Best Interests Factors), including:

(1) The age and sex of the child.

6

(2) The wishes of the child's parent or parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
    (A) the child's parent or parents;
    (B) the child's sibling; and
    (C) any other person who may significantly affect the child's best interests.
(5) The child's adjustment to the child's:
    (A) home;
    (B) school; and
    (C) community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian . . . .

I.C. § 31-17-2-8. Here, the trial court concluded that the child's best interests "are served most completely through an award of physical custody to [Mother]." (Appellant's App. p. 14). Father now argues that the trial court abused its discretion in modifying the custody order because it did so based solely on an assessment of the Best Interest Factors, without any consideration of the Relocation Factors.

Both Father and Mother rely on *Baxendale*, 878 N.E.2d at 1252, where our supreme court addressed the statutory interplay between the Relocation Factors and the Best Interests Factors. Initial custody determinations are to be based on an analysis of the Best Interests Factors. *Id.* at 1254. In order to modify the initial custody decree, the trial court must find that modification is in the child's best interests *and* that "there has been 'a substantial change' in one or more of the [Best Interests Factors] identified in . . . the initial custody determination." *Id.* at 1255 (quoting I.C. § 31-17-2-21 (the Modification Statute)). If, however, the trial court reviews a request to modify custody *stemming from* a parent's plan to relocate, the court must assess the Relocation Factors, which "incorporate[] all of

7

the [Best Interests Factors], but add[] some new ones." *Id.* at 1256-57. A parent's proposed relocation does not necessarily require a custody modification, and, in contrast to the Modification Statute, a relocation-based modification need not involve a substantial change to one of the original Best Interests Factors. *Id.*

B. *Notice and Objection*

Father claims that because he filed his motion to modify custody as a consequence of Mother's relocation, the Relocation Statute should apply. Specifically, he argues that it is *because of Mother's relocation* that the original custody order will become impossible to maintain when G.J. begins kindergarten. According to Mother, however, the Modification Statute governs because the permissibility of her relocation was long settled due to Father's failure to object to her relocation for two years.

In Indiana, there are two ways to object to a proposed relocation: (1) by filing a motion to prevent relocation, or (2) by filing a motion to modify a custody order. I.C. §§ 31-17-2.2-5(a); -3(a)(2)(H). If the non-relocating parent fails to file a motion to prevent relocation within sixty days of receiving notice, the custodial parent is free to relocate with the child. I.C. § 31-17-2.2-5. The Relocation Statute also requires that the relocating parent file notice with the trial court of his or her intent to move. I.C. § 31-17-2.2-1(a). The notice of relocation must contain certain information, including the relocating parent's new address and phone number, specific reasons for the parent's proposed relocation, and statements informing the non-relocating parent of his or her right to file a motion to prevent the relocation or a motion to modify custody. I.C. §§ 31-17-2.2-1(a), -3(a)(2). In the present case, the trial court found "[t]hat prior to her relocation, [Mother] provided [Father]

8

with written notice of her intent to relocate but did not file the statutorily required notice with this [c]ourt." (Appellant's App. p. 6). Furthermore, the trial court found that "Father did not legally contest the relocation of [Mother,] nor did he file any [m]otion with this [c]ourt requesting that [G.J.] be returned." (Appellant's App. p. 7).

Father claims that his obligation to file a motion to prevent relocation was never triggered based on Mother's failure to comply with the notice requirement. In turn, Mother argues that Father should have filed a motion to prevent relocation within the statutory timeframe notwithstanding her failure to file notice. The Relocation Statute provides that once notice is received, a parent has only sixty days to file a motion to prevent the relocation or it is deemed approved, but, contrary to Father's assertion, we find no statutory language indicating that the non-relocating parent must receive the notice *before* he may object. I.C. § 31-17-2.2-5(a). Mother cites Indiana Code section 31-17-2.2-6(a)(2)(A), which provides that a trial court may grant a temporary restraining order to mandate the child's return where a parent relocates without first providing notice if the non-relocating parent has timely filed a motion to prevent the relocation. Mother asserts that Father failed to avail himself of this remedy to her defective notice, and "implicit[ly] consent[ed] to the relocation." (Appellee's Br. p. 15). We agree with Mother that, by waiting two years to file a motion for custody modification, Father acquiesced to Mother's relocation.

There is no question that both Father and Mother failed to comply with the requirements of the Relocation Statute: Mother should have provided notice, and Father

9

should have timely objected.[2]  To an extent, Father is correct that Mother's relocation necessitated the modification of G.J.'s custody:  had Mother elected to remain in Vincennes, the alternating custody arrangement could have been maintained following G.J.'s enrollment in school.  That said, during the two years that Father and Mother commuted in order to preserve the custody agreement, it was inevitable that G.J. would eventually begin school in either Carterville or Vincennes.  The fact that the custody arrangement would become infeasible did not arise unexpectedly.  Accordingly, because we find that Father acquiesced to Mother's relocation, the Modification Statute—not the Relocation Statute—supplies the factors that the trial court should have considered in determining whether to modify custody.

### III.  *Application of the Modification Statute*

### A.  *Substantial Change in Circumstances*

Alternatively, Father claims that the trial court abused its discretion in modifying G.J.'s custody because Mother "failed to allege or prove a substantial change in circumstances, and the judgment is absent of any findings of a substantial change in circumstances."  (Appellant's Br. p. 19).  Under the Modification Statute, a custody modification must be in the child's best interests and there must have been a substantial change in at least one of the Best Interests Factors considered in making the initial custody order.  I.C. § 31-17-2-21.  Father is correct that the trial court does not specifically identify

---

[2]  The Relocation Statute does not prescribe a deadline for filing a motion to modify custody as an objection to relocation; the sixty-day period is specified for filing a motion to prevent the relocation.  I.C. §§ 31-17-2.2-1(b), -5(a).  Nevertheless, for two years, Father knew that G.J. was living in Carterville during Mother's custodial weeks and only filed for modification when G.J.'s school schedule was expected to inhibit the custody arrangement.

10

a substantial change to warrant the modification. However, Mother contends that the trial court's finding that she relocated 180 miles constitutes a sufficient substantial change in circumstances.

Our supreme court has established that "a substantial change in any one of the statutory [Best Interests] [F]actors will suffice," such as "the interaction and interrelationship of the child with . . . the child's parents." *K.I. ex rel. J.I. v. J.H.*, 904 N.E.2d 453, 460 (Ind. 2009). An out-of-state relocation is not, *per se*, a substantial change that merits modifying custody. *In re Paternity of B.D.D.*, 779 N.E.2d 9, 14 (Ind. Ct. App. 2002). Instead, a change in circumstances "must be judged in the context of the whole environment, and the effect on the child is what renders a change substantial or inconsequential." *Id.* Here, the trial court found the need to modify the custody arrangement arose as the result of G.J.'s age because his enrollment in kindergarten will render the original custody arrangement impossible to perform. Moreover, the record contains additional evidence of changed circumstances, including that G.J. has forged new relationships with Fiancé and other children in Carterville, that G.J. enrolled and thrived in a preschool environment, and that the commencement of school on a full-time basis will inevitably change the amount of time he spends with each parent. We thus find that there is a sufficient change in circumstances to support a custody modification.

### B. *Best Interests of the Child*

Lastly, Father claims that the trial court erred in concluding that it would be in G.J.'s best interests to modify custody in favor of Mother. Under the Modification Statute, along with a substantial change in circumstances, the trial court must find that "the modification

11

is in the best interests of the child." I.C. § 31-17-2-21(a)(1). "In making its determination, the [trial] court shall consider the [Best Interests] [F]actors." I.C. § 31-17-2-21(b).

To this end, the trial court heard evidence of the wishes of both Father and Mother and conducted an *in camera* interview of G.J., who was then five-and-a-half years old. While G.J.'s young age may have reduced the weight the trial court accorded to G.J.'s wishes, "we presume the trial court gave [] due consideration" to the information G.J. provided. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1257 (Ind. Ct. App. 2010). In its Findings of Fact, the trial court found that Mother and Fiancé live "in an appropriate, well[-]kept and clean home in a well maintained neighborhood[,]" where G.J. "has two (2) rooms in the home dedicated to his beds, toys and interests." (Appellant's App. p. 7). However, "Father introduced no evidence of his home environment, the bedroom of the child or the locale and condition of his home." (Appellant's App. p. 8). Father testified that G.J. has a playroom in the motorsports shop, where G.J. spends a majority of his time when in Father's care, but the trial court stated that Father "introduced no evidence of his work environment, the interior conditions of the shop or the 'playroom' located therein." (Appellant's App. p. 8). The trial court considered that G.J. has close friends in both Vincennes and Carterville but found that nearly all of G.J.'s family lives in Vincennes. The trial court also made numerous findings regarding G.J.'s education:

> (38) That over the past two years, during her custodial weeks[,] [Mother] has enrolled the child in pre-school at the Robin's Nest Learning Center.

> (39) That the child has thrived in the pre-school educational setting and earned high standardized testing scores upon his "graduation" from pre-school.
> * * * *

12

(41)  That over the past two years, during his custodial weeks, [Father] did not enroll the child in any educational program or pre-school.  Rather, [Father] brought the child to his motor[]sports shop/showroom.

* * * *

(43)  That during his custodial weeks, [Father] testified that he did not engage the child in learning colors, shapes, numbers and letters, or reading books.

(44)  That during her custodial weeks, [Mother] testified that both she and [Fiancé] engaged the child in learning colors, shapes, numbers and letters or reading books.

(45)  That [Father] testified that his future after school plan for the child was to continue to take the child to his shop.

(46)  That [Mother] testified that her future after school plan was to continue the child's education and socialization at the Robin's Nest Learning Center.

(47)  That [Father] has not taken any steps or action to enroll the child in kindergarten in a local school system.  Further, [Father] testified that he was unsure as to whether the child, were he provided physical custody, would be enrolled in the Vincennes Community School Corporation or the South Knox School Corporation.

(48)  That [Mother] has already enrolled the child in Tri-C Elementary School . . . .

(Appellant's App. pp. 8-10).

Father contests the trial court's best interests determination for four reasons:  (1) that Mother's relocation to Carterville without having an employment opportunity did not serve to provide G.J. with permanence and stability; (2) that Mother has no family in Carterville, and G.J. is very close to his three half-siblings who reside in Vincennes; (3) that too much weight was accorded to Mother's attentiveness to G.J.'s education; and (4) that the custody modification deprives Father "of any meaningful parenting time." (Appellant's Br. pp. 23-24).  With respect to Father's challenges to the weight the trial

court allocated to certain factors, it is well-established that this court confers significant deference to the trial court, and we decline Father's invitation to reweigh the evidence. *D.C.*, 977 N.E.2d at 956-57. While the valuation of the evidence is left solely to the trial court's discretion, "the trial court has a statutory duty to weigh all of [the Best Interests Factors] in arriving at its determination." *Green v. Green*, 843 N.E.2d 23, 29 (Ind. Ct. App. 2006), *trans. denied*.

Regarding Father's contention that the trial court failed to consider G.J.'s familial relationships or the effect that the custody modification would have on the quality of Father's parenting time, the trial court specifically noted in its Findings of Fact that nearly all of G.J.'s family resides in Vincennes and that G.J. spends the majority of Father's custodial weeks "at work with his Father or in the playroom at his Father's shop." (Appellant's App. p. 68 (internal quotation marks omitted)). Thus, it is apparent that the trial court did contemplate G.J.'s family ties and the time he spends with Father in rendering its decision. Also, the record establishes that the trial court heard evidence concerning G.J.'s close bond with both of his parents and his half-siblings, and although Father may disagree with the amount of attention the trial court devoted to these matters, it was within the sound discretion of the trial court to place greater significance on certain evidence and certain Best Interests Factors.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in declining to consider the Relocation Factors because Father acquiesced to Mother's relocation. Furthermore, the trial court did not err in modifying the custody order because there is

14

evidence to support the findings that there was a substantial change in circumstance and that modification is in G.J.'s best interests.

Affirmed.

VAIDIK, C. J. and MAY, J. concur