## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 23 2015, 9:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

William S. Frankel
Anthony L. Holton
Wilkinson, Goeller, Modesitt, Wilkinson
& Drummy, LLP
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Paternity of G.S. | March 23, 2015 |
| | Court of Appeals Case No. 84A04-1406-JP-261 |
| A.H. (Mother), | |
| *Appellant-Petitioner,* | Appeal from the Vigo Circuit Court |
| v. | The Honorable David R. Bolk, Judge |
| D.S. (Father), | The Honorable Daniel W. Kelly, Magistrate |
| *Appellee-Respondent* | Case No. 84C01-1105-JP-546 |

**Crone, Judge.**

## Case Summary

[1] A.H. ("Mother") appeals the trial court's modification of custody of her minor child, G.S., in favor of D.S. ("Father"). Mother was originally granted primary

custody of G.S. and Father was granted parenting time. In October 2013, Mother filed her notice of intent to relocate. Father objected to the move and filed a petition to modify custody. The trial court entered its order granting Father's petition to modify and awarding primary custody of G.S. to Father. On appeal, Mother claims that the trial court abused its discretion because it failed to consider the proper statutory relocation factors in denying her request to relocate and granting Father's petition to modify. Mother further asserts that the evidence does not support the trial court's conclusion that relocation was not in G.S.'s best interests and that custody modification was warranted. Finding no abuse of discretion and sufficient evidence, we affirm.

## Facts and Procedural History

[2] G.S. was born out of wedlock on March 10, 2009. Mother and Father signed a paternity affidavit at the hospital establishing Father's paternity. The parties remained in a relationship and resided in Terre Haute after G.S.'s birth. That relationship eventually ended and the parties appeared in court for the first time on September 7, 2011, to establish parenting time and support. Father was ordered to pay child support and was granted visitation in accordance with the Indiana Parenting Time Guidelines. In its written order, the trial court specifically advised the parties regarding Indiana's Relocation Statute, Indiana Code Section 31-17-2.2-1 *et. seq.*, and the notice requirements involved if either parent was contemplating a move.

[3] Five months later, Father filed a petition for temporary restraining order ("TRO") to prevent Mother from relocating, without the proper statutory

notice, to Pekin, Illinois, in order to take a job at Cracker Barrel located in Bloomington, Illinois. The trial court granted the TRO and held a hearing on February 13, 2012. Following the hearing, Mother withdrew her request to relocate.

[4] Two weeks later, Mother filed a new notice of her intent to relocate to Pekin. Father objected and the court conducted a lengthy hearing on April 24, 2012. The parties agreed to submit their dispute to mediation. When the parties failed to reach an agreement in mediation, the matter was again heard by the trial court on February 1 and 4, 2013. Thereafter, the court issued its order permitting Mother to move with G.S. as far as 100 miles from Terre Haute in order to accommodate her job opportunity with Cracker Barrel. The court acknowledged that although this would still require a forty-five-minute commute for Mother, the 100-mile limit on the move would allow Father to remain involved in G.S.'s activities as he had been consistently for the first three years of G.S.'s life. The court also warned, "If a move of a greater distance is made by Mother, custody shall be transferred to Father." Appellant's App. at 17.

[5] On October 10, 2013, Mother filed yet another notice of her intent to relocate to Pekin. Mother claimed that while she had already moved within the 100-mile limit to Mahomet, Illinois, she still wanted to move farther to Pekin. Father timely filed his objection to the relocation and requested a modification of child custody from Mother to Father. An evidentiary hearing was held on April 11, 2014. Father presented evidence to the trial court which indicated that Mother

was not actually living in Mahomet and had moved "for all intents and purposes" to Pekin with G.S. despite court orders forbidding her from doing so. *Id*. at 17.

[6]     The court concluded in relevant part,

> The court's order of February, 2013 specifically stated that the 100-mile accommodation to Mother's job at Cracker Barrel was to allow Father to be involved in [G.S.'s] school and extracurricular activities. Despite this, Mother enrolled [G.S.] in a preschool in Pekin and that very spring allowed her mother to enroll [G.S.] in a teeball league in Pekin and told Father nothing about it. Even had Father been so informed, as required by the [Indiana Parenting Time Guidelines], the three-hour distance from Father's home would not allow Father, a former teeball coach to his older son, to watch any of the games.
>
> This is precisely the deprivation of parental involvement against which the court was attempting to protect Father by its order of February, 2013.
>
> While the evidence regarding the fitness of each party to be the primary custodian of [G.S.] is mixed and conflicting, Father appears to be genuinely and consistently trying to remain fully involved in [G.S.'s] life, while Mother appears equally bent on living in Pekin where her mother resides – a distance of three hours away from Father, despite the court's multiple rulings to the contrary.
>
> ….
>
> For all the foregoing, the court finds that there has been a substantial and continuing change in one or more factor[s] relative to custody and that it would be in the minor child's best interests to be placed in the primary care of his father. Mother should be awarded parenting time in accordance with the Indiana Parenting Time Guidelines. If the Mother should choose to move back to Vigo County, Indiana, the scales could possibly be tipped back in her favor on the issue of primary custody, but having Father's role in [G.S.'s] life continually diminished by Mother is not in the minor child's best interests, and nothing short of this modification would appear to prevent this at this

time. Simply stated, [G.S.] is to be raised by his parents; not by his mother and grandmother.

*Id*. at 18-19. Mother filed a motion to reconsider, which was denied by the trial court. This appeal followed.

# Discussion and Decision

[7] Mother asserts that the trial court erred in granting Father's petition for custody modification and awarding primary physical custody of G.S. to Father. Our standard of review is well settled.

> When reviewing a custody determination, we afford the trial court considerable deference as it is the trial court that observes the parties' conduct and demeanor and hears their testimonies. We review custody modifications for an abuse of discretion "with a preference for granting latitude and deference to our trial judges in family law matters." We will not reweigh the evidence or judge the credibility of witnesses. Rather, we will reverse the trial court's custody determination based only upon a trial court's abuse of discretion that is "clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom." "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal."

*In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012) (citations omitted), *trans. denied*.

[8] Our preference for granting latitude and deference to our family-law trial judges is reinforced by the concern for finality in custody matters. *See Baxendale v. Raich*, 878 N.E.2d 1252, 1257-58 (Ind. 2008). Additionally, we accord this deference because trial courts directly interact with the parties and are in a superior position "to assess credibility and character through both factual

testimony and intuitive discernment." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). Conversely, appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002).

[9] We note that Father failed to timely file a proper appellee's brief. When an appellee fails to submit a brief on appeal, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error. *In re Paternity of S.C.*, 966 N.E.2d 143, 148 (Ind. Ct. App. 2012), *trans. denied*. We may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Id*. "Moreover, we will not undertake the burden of developing legal arguments on the appellee's behalf." *Id*. Nevertheless, even under this less stringent standard, we are obligated to correctly apply the law to the facts in the record to determine whether reversal is warranted. *Tisdale v. Bolick*, 978 N.E.2d 30, 34 (Ind. Ct. App. 2012).

[10] The current custody modification stems from Father's petition to modify child custody in response to Mother's notice of intent to relocate. When a parent files a notice of intent to relocate, the nonrelocating parent may object by filing a motion to modify custody or to prevent the child's relocation. Ind. Code §§ 31-17-2.2-1(b), 31-17-2.2-5(a). The Relocation Statute provides that when a party moves to modify custody in response to the proposed relocation of the other parent, the trial court must take certain factors into consideration. *Jarrell*

*v. Jarrell*, 5 N.E.3d 1186, 1190 (Ind. Ct. App. 2014), *trans. denied*. Specifically, in considering a proposed relocation, the trial court must "take into account" the following factors:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

[11]     Ind. Code § 31-17-2.2-1(b).   The "[o]ther factors affecting the best interest of the child" include the statutory factors relevant to an initial custody order or a modification of that order, such as the child's age and sex; the parents' wishes; the child's wishes; the child's interaction and interrelationship with parents, siblings, and other persons affecting the child's best interest; and the child's adjustment to home, school, and the community.  Ind. Code § 31-17-2-8.  In contrast to a modification of child custody pursuant to the Modification Statute, Indiana Code Section 31-17-2-21, a relocation-based modification need not

involve a substantial change to one of the original best interest factors. *Jarrell*, 5 N.E.3d at 1190 (citing *Baxendale*, 878 N.E.2d at 1256-57).

[12]     Accordingly, prior to granting a relocation-based petition to modify custody, the trial court is required to consider all the enumerated relocation factors listed in Indiana Code Section 31-17-2.2-1(b). *In re Marriage of Harpenau*, 17 N.E.3d 342, 347 (Ind. Ct. App. 2014). Mother first claims that the trial court did not consider the proper statutory factors in making its ruling but instead considered this matter using a non-relocation custody modification framework. We acknowledge that while the trial court did reference the non-relocation custody modification standard in one of its findings,[1] our review of the record and the trial court's numerous other findings indicates that the trial court did in fact properly consider evidence relevant to each of the relocation factors. There is ample evidence in the record regarding: (1) the distance involved in Mother's proposed change of residence; (2) the hardship and expense involved for Father to exercise parenting time; (3) the feasibility of preserving the relationship between Father and G.S.; (4) whether there is an established pattern of conduct by Mother to promote or thwart Father's contact with G.S.; (5) the reasons each parent seeks or opposes the relocation; and (6) other factors affecting the best interest of G.S. While we understand that Mother may disagree with the

---

[1] Specifically, the trial court found "that there has been a substantial and continuing change in one or more factor[s] relative to custody and that it would be in [G.S.'s] best interests to be placed in the primary care and custody of his father." Appellant's App. at 18. We fail to see how applying a more stringent standard requiring the finding of an additional element would inure to Mother's disadvantage.

weight of the evidence regarding each factor, her argument that the trial court wholly failed to consider evidence of the appropriate factors is without merit.

[13]    Mother maintains that even if the trial court considered the proper factors, the evidence does not support the trial court's conclusion that relocation was not in G.S.'s best interests and that modification of custody was warranted. Where, as here, the non-relocating parent files a motion to prevent relocation, the relocating parent must prove "that the proposed relocation is made in good faith and for a legitimate reason." Ind. Code § 31-17-2.2-5. If the relocating parent makes such a showing, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." *Id.*

[14]    Because the trial court made no specific finding that Mother's request to relocate to Pekin was not made in good faith or for a legitimate reason,[2] we will assume that Mother met her burden and focus on the trial court's ultimate determination that relocation was not in G.S.'s best interest and that a change in custody was warranted. The evidence indicates that Mother's relocation to Pekin would put G.S. almost three full hours away from Father. While Mother insists that the move would not impose any additional hardship and expense on Father to exercise his allotted parenting time, there is ample evidence in the record to support a conclusion that the move would greatly interfere with the

---

[2] While the trial court acknowledged that Mother claimed that an employment opportunity was her reason for relocating to Pekin, the trial court clearly implied in its findings that it questioned Mother's motives. Appellant's App. at 18.

close relationship between Father and G.S. The trial court's prior 100-mile relocation accommodation for Mother's employment opportunity was an attempt to harmonize Mother's desire to relocate with Father's ability for parental involvement.

[15] It is crystal clear from this record that Father desires, not simply the minimum parenting time, but to be actively involved in G.S.'s school and extracurricular activities. There was significant evidence presented to the trial court that Mother has disregarded prior court orders and has instead exhibited a consistent pattern of attempting to thwart Father's relationship with G.S. Indeed, the trial court specifically found that Mother inappropriately used G.S. as leverage by threatening Father that she would allow him no additional parenting time with G.S. unless he consented to her relocation to Pekin. Appellant's App. at 18. As noted, the trial court's prior accommodation was an attempt to balance the parties' competing desires in the best interest of G.S., and the record shows that Mother has done much to upset that balance. Based upon the evidence, including its extended history in dealing with these parents, the trial court concluded that relocation was not in G.S.'s best interest and that custody modification was warranted.

[16] "When reviewing a determination regarding the best interests of a child for relocation purposes, we 'view the evidence in the light most favorable to the trial court's decision and defer to the trial court's weighing of the evidence.'" *H.H. v. A.A.*, 3 N.E.3d 30, 37 (Ind. Ct. App. 2014) (quoting *T.L. v. J.L.*, 950 N.E.2d 779, 788-89 (Ind. Ct. App. 2011)). Considering the evidence favorable

to the trial court's judgment and the reasonable inferences flowing therefrom, we cannot say that Mother has established prima facie error here. Mother essentially requests that we reweigh the evidence in her favor, a task not within our prerogative on appeal. The judgment of the trial court is affirmed.

[17] Affirmed.

Friedlander, J., and Kirsch, J., concur.