## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 30 2016, 10:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Susan Wilkie
Susan Wilkie Law
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tricia Wallerstedt, <br> *Appellant,* <br><br> v. <br><br> Christopher Wallerstedt, <br> *Appellee.* | June 30, 2016 <br><br> Court of Appeals Cause No. <br> 82A04-1511-DR-1987 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Jeff Tornatta, Judge <br><br> Trial Court Cause No. <br> 82D06-0408-DR-860 |

**Barnes, Judge.**

# Case Summary

Tricia Wallerstedt ("Mother") appeals the trial court's modification of child custody and child support. We affirm in part, reverse in part, and remand.

# Issues

Mother raises several issues, which we restate as:

> I.  whether the trial court properly modified child custody; and
>
> II.  whether the trial court properly modified the child support order.

# Facts

Mother was married to Christopher Wallerstedt ("Father"), and the couple had two children, Ja.W. and Jo.W. The couple's marriage was dissolved in December 2004, and Mother was granted sole physical and legal custody of the children. At that time, Father was awarded supervised visitation because a protective order had been issued against Father due to domestic violence. In 2008, Mother and Father reconciled. In September 2010, Mother and the children moved to Virginia Beach, Virginia, to help her brother. Mother and Father planned that Father would join Mother and the children in Virginia after he finished his schooling. At some point, however, the parties' relationship deteriorated, and Father never moved to Virginia with Mother and the children. Father subsequently remarried and had another child.

In July 2014, Father filed a petition for contempt regarding parenting time. The parties reached a parenting time agreement, and Father dismissed the petition in August 2014. However, in October 2014, Father filed another contempt petition. In December 2014, Mother and the children returned to Evansville and began staying with Mother's family so that Mother could attend the court hearings without driving back and forth from Virginia. In April 2015, Father filed a petition to modify custody and an objection to Mother's relocation to Virginia. The trial court held a hearing on the pending matters, and Father withdrew his contempt petition. In August 2015, the trial court entered the following order:

> There has been a substantial and continuing change, including but not limited to, Mother's relocation with the children to Virginia Beach, Virginia. Her move has made it difficult for the Father to have regular and consistent contact with the children. It is in the best interest of the children that the Mother resides in the Evansville area. While the Court does not modify custody, it is entering this order after the Mother reluctantly advised she will move back to Evansville.

> Parties shall have joint legal custody with the Mother to have primary physical custody. Mother is to obtain her own residence (she currently is residing with family). The children are to attend a regular school setting. However, because both children have attended Independent Educational Programs, it may include some on-line schooling, if deemed appropriate by the school and both parents. Both children shall continue with counseling.

> Father shall have parenting time every Friday from after school or work until Sunday at 6 p.m., except the weekend he works on Saturday. He shall enjoy an overnight during the week to

coincide with his day off. Since this results in the Father having most weekends, if the Mother's family has a special event, the Father should afford her the opportunity to have the children. Father shall enjoy parenting time at all other times agreed upon and shall have an additional week when he is not working. Until the relationship between [Ja.W.] and other members of the Father's household improves, [Ja.W.] is not to be in Father's home when the Father is not present. Court leaves to the parties' good judgment, as to when overnights with [Ja.W.] and the Father are appropriate.

Father is ordered to financially assist the Mother in moving her belonging[s] to Evansville and setting up her household. Father shall pay support in the amount of $100.00 per week consistent with the attached CSPW, effective 08/14/15. Mother to pay the first $692.00 of uninsured medical expenses annually. Thereafter, Father to pay 63% and Mother 37%. Mother's request for attorney fees is denied.

App. pp. 8-9.

[5] Mother filed a motion to correct error, which the trial court granted in part because it found that Father's income was calculated incorrectly on the child support worksheet. The trial court modified Father's child support obligation to $154 per week effective October 23, 2015. Mother now appeals.

## Analysis

[6] We initially note that Father did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments for him, and we apply a less stringent standard of review with respect to showings of reversible error. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1255 (Ind.

Ct. App. 2010). That is, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Id.*

[7] The trial court entered findings of fact and conclusion thereon. Pursuant to Indiana Trial Rule 52(A), the reviewing court will "not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *D.C. v. J.A.C.*, 977 N.E.2d 951, 953 (Ind. 2012). Where a trial court enters findings sua sponte, the appellate court reviews issues covered by the findings with a two-tiered standard of review that asks whether the evidence supports the findings, and whether the findings support the judgment. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). Any issue not covered by the findings is reviewed under the general judgment standard, meaning a reviewing court should affirm based on any legal theory supported by the evidence. *Id.*

[8] Our courts have expressed a "preference for granting latitude and deference to our trial judges in family law matters." *T.L. v. J.L.*, 950 N.E.2d 779, 784 (Ind. Ct. App. 2011). "Our supreme court has recently re-emphasized this principle, stating that we afford such deference because of trial judges' 'unique, direct interactions with the parties face-to-face.'" *Id.* (quoting *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011)). "[O]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Best*, 941 N.E.2d at 503. We cannot weigh the evidence but must consider it in a light most favorable to the judgment. *Id.* An appellate court may not substitute its

own judgment for that of the trial court if any evidence or legitimate inferences support the trial court's judgment. *Id.*

### I. Modification/Relocation

Mother makes several arguments related to the modification and relocation statutes. Mother first argues that the relocation statutes are inapplicable here because Mother and Father made a joint decision to move to Virginia and Father abandoned Mother and the children when he did not move with them. Mother also argues that Father's failure to object to the move to Virginia from September 2010 to April 2015 resulted in an acquiescence to the move. Finally, Mother argues that the trial court erred by modifying custody and by ordering her to move out of her parents' residence.

In *Baxendale v. Raich*, 878 N.E.2d 1252 (Ind. 2008), our supreme court discussed the relationship between the custody modification statute and the relocation statutes. The general provision governing custody modification is found in Indiana Code Section 31-17-2-21. Modifications are permitted only if the modification is in the best interests of the child and there has been "a substantial change" in one or more of the following factors:

   (1)    The age and sex of the child.

   (2)    The wishes of the child's parent or parents.

   (3)    The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4)     The interaction and interrelationship of the child with:

    (A)     the child's parent or parents;

    (B)     the child's sibling; and

    (C)     any other person who may significantly affect the child's best interests.

(5)     The child's adjustment to the child's:

    (A)     home;

    (B)     school; and

    (C)     community.

(6)     The mental and physical health of all individuals involved.

(7)     Evidence of a pattern of domestic or family violence by either parent.

Ind. Code § 31-17-2-21(a); Ind. Code § 31-17-2-8.

On the other hand, the relocation of a parent is governed by Indiana Code Chapter 31-17-2.2. Under Indiana Code Section 31-17-2.2-5(c), the relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason. If the relocating individual meets that burden of proof, the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child. I.C. § 31-17-2.2-5(d).

In the case of a proposed relocation, the trial court must take into account the following factors in determining whether to modify a custody order:

(1)     The distance involved in the proposed change of residence.

(2)     The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3)     The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4)     Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5)     The reasons provided by the:

(A)     relocating individual for seeking relocation; and

(B)     nonrelocating parent for opposing the relocation of the child.

(6)     Other factors affecting the best interest of the child.

I.C. § 31-17-2.2-1.

[12]    Our supreme court has held that the relocation statute incorporates all of the modification of custody considerations "but adds some new ones." *Baxendale*, 878 N.E.2d 1257. The relocation statutes do "not necessarily require a substantial change" in one of the modification factors. *Id.* Relocation "may or may not warrant a change of custody." *Id.*

[13]    Mother argues that Father acquiesced to the relocation and cannot now challenge it. We addressed a similar argument in *Jarrell v. Jarrell*, 5 N.E.3d 1186 (Ind. Ct. App. 2014), *trans. denied*. There, the mother moved approximately three hours away with the child but failed to file a notice of relocation, and the father did not object to the relocation until the child was ready to start kindergarten nearly two years later. We noted that both the mother and the father had failed to comply with the relocation statutes. The mother should have provided notice of the relocation, and the father should have filed an earlier objection. We concluded, however, that the father had acquiesced to the mother's relocation. Consequently, we found that the modification statute, not the relocation statute, supplied the factors that the trial court should have considered in determining whether to modify custody. We concluded there was "a sufficient change in circumstances to support a custody modification," and modification was in the child's best interest. *Jarrell*, 5 N.E.3d at 1193-94.

[14]    Similarly, here, Mother and the children moved to Virginia in September 2010. Although Father was supposed to move with them after he finished his schooling, he eventually decided not to make the move. Father did not object to the relocation until April 2015. Given Father's long acquiescence in the

relocation, we conclude that, as in *Jarrell*, the custody modification statute, not the relocation statutes, are applicable here.

[15] The trial court concluded that a substantial change had occurred because it had become difficult for Father to have regular and consistent contact with the children. The relocation had clearly resulted in a significant change in the interaction and interrelationship of the children with Father. The guardian ad litem ("GAL") testified that the distance created "a real problem for these children." Tr. p. 14. Ultimately, the GAL recommended that Father have custody of the children because his household was more stable. However, the GAL acknowledged that the children were very close to Mother and needed "a lot of time" with Mother. *Id.*

[16] Rather than follow the GAL's custody recommendation, the trial court suggested that Mother stay in Evansville instead of returning to Virginia. The trial court recognized that Mother could return to Virginia, but believed that regular, consistent contact with both parents was in the children's best interest. Mother reluctantly agreed that she was willing to move back to Indiana rather than change physical custody to Father.

[17] The trial court made extensive comments after the parties presented evidence. In particular, the trial court was "really concerned" about Ja.W. Tr. p. 176. Ja.W. has struggled significantly with reading, getting along with other children at school, and adjusting to staying with Father and stepmother for extended periods over the summer. Jo.W. was described as overly accommodating and

"ghostlike." *Id.* at 127. Mother had home-schooled the children in Virginia, and they were enrolled in an on-line school in Indiana. However, the trial court and the GAL both recommended that the children attend public school. Given the significant distance between Father and the children and the children's struggles, the trial court's conclusion that there was a substantial change in one of the custody modification factors and that a change in custody was in the children's best interest is not clearly erroneous.

[18] Finally, Mother challenges the trial court's order that Mother obtain her own residence. Mother contends that ordering her to move is "an infringement on a fundamental right." Appellant's Br. p. 20. Mother moved back to Indiana with the children to participate in the court hearings. However, she maintained her housing in Virginia, and she had to live with family in Indiana. She and the children were living with her parents, her brother, his wife and three children, and her sister and her two children in a three bedroom, one bathroom house. Mother, grandmother, and Jo.W. were sharing a bed, and Ja.W. was sleeping on a cot. The trial court recognized that it would take some time for Mother to get established and find housing for herself and the children, but encouraged Mother to start moving toward that goal. Given the overcrowding at Mother's current housing, we cannot say that the trial court's order is clearly erroneous.

## II. Child Support

[19] Mother argues that the trial court erred when it modified the child support order. On August 10, 2015, the trial court issued its order regarding custody and child support. Mother filed a motion to correct error regarding the child

support order, and the trial court corrected the error on October 23, 2015. The trial court, however, made the effective date of the new child support order October 23, 2015, instead of August 10, 2015. Mother argues that the child support order should have been effective August 10, 2015.

[20] A trial court has discretion to make a modification of child support relate back to the date the petition to modify is filed, or any date thereafter. *Becker v. Becker*, 902 N.E.2d 818, 820 (Ind. 2009). However, when the trial court failed to make the child support correction retroactive to the original August 2015 order, Mother was unfairly penalized by the loss of the three months of increased child support. We conclude that when the trial court corrected the calculation error in the August child support calculation, it should have made the revised child support order effective August 10, 2015, rather than October 23, 2015.

## Conclusion

[21] The trial court's modification of custody is not clearly erroneous, but the trial court abused its discretion when it modified the child support order. We affirm in part, reverse in part, and remand.

[22] Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Mathias, J., concur.