## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 30 2018, 8:48 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Caryn E. Garton
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

IN THE
# COURT OF APPEALS OF INDIANA
</center>

| | |
|---|---|
| Cornelius L. Thomas,<br>*Appellant-Respondent,*<br><br>v.<br><br>Amber P. Hall,<br>*Appellee-Petitioner.* | July 30, 2018<br>Court of Appeals Case No.<br>18A-DR-216<br>Appeal from the Allen Superior Court<br>The Honorable Daniel G. Heath, Judge<br>Trial Court Cause No.<br>02D07-0705-DR-639 |

**Mathias, Judge.**

[1] The Allen Superior Court entered an order denying a petition to modify custody filed by Cornelius L. Thomas ("Father") in which he sought to obtain permanent sole legal custody of his minor son H.T. Father appeals and presents

two issues for our review, which we consolidate and restate as whether the trial court clearly erred in denying his petition to modify custody.

[2] We affirm.

## Facts and Procedural History

[3] Mother and Father had one child together, H.T., who was born in March 2006. The couple married a few months later on June 1, 2006, but in May 2007, Mother filed a petition for dissolution of the marriage. Mother's petition was granted on October 21, 2008, and Mother was granted sole legal custody of H.T. because the trial court determined that Father "has not visited nor has he had contact with the child since a date prior to the filing of the petition for dissolution of marriage." Appellant's App. p. 27. In February 2009, Mother and Father purportedly agreed to file a petition to modify custody to joint custody because H.T. was living with Father at the time. However, Mother's signature is not on the document, and the court denied the petition because it did not address the issue of child support. *See id.* at 37, 39.

[4] From 2007 through June 2014, H.T. spent most of his time with Mother, his younger half-brother S.H.,[1] and his grandmother Linda Hall ("Grandmother") and grandfather Paul Hall (collectively "Grandparents") in Fort Wayne,

---

[1] It is unclear from the record if S.H.'s last name is Hall. However, because his last name is not in the record, he lives with Mother, and we will not use his first name, we will proceed as if it is Hall by using the initials S.H. Mother also has a third son who is four months old, but Mother adopted him out to a family because she did not want the child's father in her life, and she never told him she was pregnant. Tr. p. 26.

Indiana. Although H.T. stayed with Father at times during this period, primarily Father's contact with his son was limited in part because he was in the Army National Guard. Father married Maria McQuarie ("Maria") around 2011, and the two subsequently purchased a two-story home together in South Lake, Texas.

In June 2014, H.T. flew to Texas to spend time with Father.[2] Instead of returning to Indiana at the end of the summer, H.T. stayed with Father and Maria. H.T. has lived with Father and Maria in Texas since June 2014. In Texas, Father works as a welder where he earns approximately $50,000 per year, and Maria works as a buyer for J.C. Penny where she earns approximately $130,000 per year. Father and Maria have no children together, and Maria has no children from any prior relationship. H.T. started the third-grade in Fall 2014, and Father was concerned when he learned that H.T. could not read. After attending school in Texas for two-and-a-half years, H.T. now enjoys reading, and he receives mostly A's and B's.

Since June 2014, H.T.'s contact with Mother and his other relatives in Indiana has been limited. Mother has called H.T. on several occasions with little

---

[2] The facts surrounding H.T.'s June 2014 trip to stay with Father in Texas are in dispute. Mother contends that she brought H.T. to Indianapolis to stay with Father and H.T.'s paternal grandfather, and Father left with H.T. for Texas without Mother's knowledge Tr. pp. 12–13. Father asserts that he and Mother had an agreement that H.T. would spend the summer with Father. *Id.* at 36. He explained that Mother dropped H.T. off at H.T.'s paternal grandfather's home, and H.T.'s paternal grandfather drove H.T. to the airport. *Id.* Father had purchased a plane ticket for H.T. to fly to Texas, and Father met H.T. at the airport in Texas. *Id.* Father maintains that he tried to reach Mother at the end of the summer, but he was unsuccessful. *Id.* at 38.

success. Moreover, Mother has never received a call from H.T. during the time he has lived in Texas. Grandparents have only spoken to H.T. on the phone twice throughout 2016 and 2017. Mother and Grandparents have also sent H.T. gifts, money, and letters, but it is unclear if he has received them. And prior to leaving Indiana, H.T. was close with his half-brother S.H., but he has had no contact with him since June 2014. In February 2016, Mother drove to Texas to see H.T., but Father did not allow her to see him.

[7] On March 24, 2016, Father filed a *pro se* petition in Texas seeking modification of the Indiana custody order. Mother was made aware of Father's petition in June 2016, and on July 18, Father filed a petition in which he alleged that he had been granted custody of H.T. in Texas, and he requested Indiana to recognize the Texas order and grant relief as to the 2008 Indiana custody order.

[8] After several preliminary hearings and continuances, the Allen Superior Court held a hearing on August 23, 2017, after which it, in part, determined that Indiana established continuing exclusive jurisdiction over the custody of H.T. in 2008, and thus the Texas order granting custody to H.T. was issued without jurisdiction. The court then directed Father to file a petition to modify custody in the Allen Superior Court. On December 21, 2017, Father filed, through counsel, a petition to modify custody, and a hearing was held the next day where Mother appeared in person, *pro se*.

[9] During the December 22 hearing, the court heard testimony from Mother, Father, and Grandparents. On December 31, the trial court issued an order

denying Father's petition and reaffirmed the 2008 custody order granting Mother sole legal and primary custody of H.T. The court also granted Father parenting time according to the Indiana Parenting Time Guidelines with distance as a major factor.

[10] Father now appeals.

## Standard of Review

[11] We initially note that Mother has not filed an appellee's brief. In such cases, we will not develop an argument for the appellee, and we apply a less stringent standard of review. *Jenkins v. Jenkins*, 17 N.E.3d 350, 351 (Ind. Ct. App. 2014). "We may reverse if the appellant establishes prima facie error, which is error at first sight, on first appearance, or on the face of it." *Id.* at 351–52. However, Mother's failure to provide argument does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required. *Id.* at 352.

[12] Under Indiana Code section 31-14-13-6, a trial court may *not* modify an existing custody order unless it determines that (1) the modification is in the best interests of the child, and (2) there has been a substantial change in one or more statutory factors that are outlined in Indiana Code section 31-17-2-8. The statutory factors under Section 31-17-2-8 relevant to the case before us include:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.
> ***

(4) The interaction and interrelationship of the child with:

    (A) the child's parent or parents;

    (B) the child's sibling; and

    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

    (A) home;

    (B) school; and

    (C) community.

(6) The mental and physical health of all individuals involved.

[13]    Because Father filed the motion to modify, he had the burden to demonstrate modification would be in the best interests of H.T. and that a substantial change in one or more of the factors has occurred. *See Heagy v. Kean*, 864 N.E.2d 383, 388 (Ind. Ct. App. 2007), *trans. denied.* Therefore, by appealing the denial of his motion to modify custody, Father is appealing from a negative judgment. *See Nunn v. Nunn*, 791 N.E.2d 779, 783 (Ind. Ct. App. 2003). We will reverse a negative judgment only if it is contrary to law, meaning that the evidence points unerringly to a conclusion different from that reached by the trial court. *Id.* It is not enough that the evidence might support some other conclusion; it must instead positively require the conclusion contended for by Father before there is a basis for reversal. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)). "[I]t is particularly difficult for a reviewing court to second-guess a situation that centers on the personalities of two parents battling for control of a child." *Id.* at 308.

[14]     Where, as here, the trial court supported its custody determination with specific findings of fact and conclusions of law pursuant to Indiana Trial Rule 52, we will not set aside the findings or judgment unless they are clearly erroneous. *Hughes v. Rogusta*, 830 N.E.2d 898, 902 (Ind. Ct. App. 2005). We will disturb the trial court's judgment only where there is no evidence supporting the findings, or where the findings fail to support the judgment. *Id.* Moreover, we consider only the evidence most favorable to the judgment, with all reasonable inferences drawn in favor of the judgment. *Id.*

[15]     With this highly deferential standard of review in mind, we review Father's claim that the trial court erred when it denied his petition to modify custody.

## Discussion and Decision

[16]     Father contends that failing to modify custody was not in H.T.'s best interests, and that there has been a substantial change in circumstances in one or more of the statutory factors found in Section 31-17-2-8. Viewing only the evidence favorable to the trial court's decision, we are unable to agree.

[17]     We acknowledge that Father presented evidence that could have supported a conclusion that modification of custody would have been in H.T.'s best interests: H.T. is living in a two-parent household in Texas where, as a twelve-year-old boy, he is able to spend time with his Father during his formative years; Mother never filed a pleading with any court while H.T. was in Texas to

regain custody, thereby displaying some level of acquiescence;[3] H.T. calls his step-mother Maria "Mama Isabel," and he lives next door to his best friend; H.T. lives in a two-story home in Texas where Father and Maria both earn a stable and significant income; H.T. has excelled in school after arriving in Texas unable to read, and he now earns mostly A's and B's; and Father has no history of drug use or mental illness, whereas Mother and Grandfather each have a lengthy criminal history. From this evidence, a reasonable trier of fact could readily conclude that modification of custody to Father was in H.T.'s best interests, and, were we in the position of the trial court, we may well have concluded that modification was in H.T.'s best interests. However, we are not in the position of the trial court, nor are we able to reweigh the evidence and substitute our judgment for that of the trial court.

[18]     As an appellate court, we must give deference to the trial court, especially in matters regarding child custody. Indeed, we "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the

---

[3] Father cites to this court's decision in *A.J.L. v. D.A.L.*, 912 N.E.2d 866 (Ind. Ct. App. 2009), to support his position that Mother's voluntary relinquishment of H.T. to Father in Texas "has left the lives and affections of [Father], Maria, and [H.T.] so completely interwoven that modification to [Father] is in the best interest of [H.T.]." Appellant's Br. at 23. However, in *A.J.L.*, a panel of this court upheld the trial court's decision modifying custody of the child from Mother to Aunt and Uncle because "[t]he evidence in the record supports that determination." 912 N.E.2d at 872. Similarly, as discussed below, there is evidence in the record here that supports the trial court's determination that modifying custody so that H.T. would remain with Father is not in H.T.'s best interest.

evidence." *Jarrell v. Jarrell*, 5 N.E.3d 1186, 1190 (Ind. Ct. App. 2014), *trans. denied* (quoting *Kirk*, 770 N.E.2d at 307).

[19] Here, the evidence favorable to the trial court's decision shows that any stability H.T. has had in Texas has come at the price of Father openly violating a valid Indiana custody order. Further, Father has permitted very little contact between H.T. and Mother and H.T. and Grandparents over the past three years despite their regular and consistent attempts. Mother even traveled to Texas in February 2016, but Father would not allow her to see H.T. In fact, Father called Texas police to intervene and prevent Mother from seeing H.T. H.T. also has a half-brother in Indiana, and the two shared a close relationship before H.T. went to Texas. Moreover, H.T. would have his own room at his Grandparent's house.

[20] The court noted its concern with granting physical custody of H.T. to Mother and remarked, "[a]lthough due to her self-employment she may be able to spend more quality time with [H.T.,] her earnings and accordingly, [H.T.'s] lifestyle and opportunities may be substantially diminished, at least in the near-term future." Appellant's App. p. 105. But the court concluded that Father's actions in removing H.T. to Texas without permission from the court and then alienating H.T. from Mother and Grandparents were not in H.T.'s best interests. And the court noted that it is "more confident that [Mother] will ensure that [Father] maintains his parenting relationship with [H.T.]" *Id.* at 108.

Considering these facts and circumstances, the trial court reasonably concluded that modifying custody so that H.T. would remain with Father was not in the best interests of the child.[4] Father's arguments on appeal are little more than a request that we reweigh the evidence and come to a conclusion contrary to that reached by the trial court. This we will not do on appeal. *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016).

## Conclusion

Viewing only the evidence favorable to the trial court's decision, we cannot say that it erred when it denied Father's petition to modify custody. Accordingly, we affirm.

Riley, J., and May, J., concur.

---

[4] Because we find that the trial court did not err when it concluded that modifying custody so that H.T. would remain with Father was not in H.T.'s best interests, we need not address Father's contention that there has been a substantial change in one or more of the best interests factors. However, we note that the trial court concluded, "[Father] has failed to carry his burden by a preponderance of the evidence to demonstrate a substantial change in [Mother's] household to support his request for primary physical custody." Appellant's App. p. 108. Father's argument regarding a substantial change is, again, nothing more than a request for us to reweigh the evidence, which we will not do on appeal. *See* Appellant's Br. at 26–28; *Wills v. Gregory*, 92 N.E.3d 1133, 1142 (Ind. Ct. App. 2018), *trans. denied.*