# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 29 2017, 11:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cassandra A. Kruse
Emswiller Williams Noland &
Clarke, PC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Elizabeth Eichholtz Walker
Cohen & Malad, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stacey H. Young,

*Appellant-Petitioner,*

v.

Michael A. Young,

*Appellee-Respondent.*

December 29, 2017

Court of Appeals Case No.
29A02-1707-DR-1478

Appeal from the Hamilton
Superior Court

The Honorable William
Greenaway, Special Judge

Trial Court Cause No.
29D04-1308-DR-7339

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Stacey H. Young (Mother), appeals the trial court's denial of her motion to modify joint legal custody and parenting time of the minor child, O.Y. (Child), in favor of Appellee-Petitioner, Michael Young (Father).

We affirm.

# ISSUES

Mother presents us with five issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion by appointing a *guardian ad litem* and allocating the fees to Mother;

(2) Whether the trial court abused its discretion by determining that no substantial and continuing change of circumstances existed and a modification of legal custody was not in the Child's best interest;

(3) Whether the trial court abused its discretion in denying Mother's request for modification of parenting time;

(4) Whether the trial court abused its discretion when it ordered Mother to reimburse Father's work-related childcare costs; and

(5) Whether the trial court abused its discretion by ordering Mother to pay $10,000 of Father's attorney fees.

# FACTS AND PROCEDURAL HISTORY

Mother and Father were married on August 25, 2007. During their marriage, one Child was born on July 22, 2009. Mother filed a petition for dissolution of

marriage on August 8, 2013. On October 14, 2013, the trial court issued a preliminary order, awarding Mother sole custody of the Child and granting Father supervised parenting time. In addition, the trial court required Father to attend anger management counseling and enjoined him from consuming alcoholic beverages during his parenting time with the Child. The trial court ordered Father to pay weekly child support in the amount of $267.75, which included a weekly credit of $199 for work-related childcare expenses which Mother was responsible for paying. On December 1, 2013, the trial court allowed Father to commence unsupervised parenting time. On February 26, 2014, the trial court appointed Wendy Clar as the Child's *guardian ad litem* (GAL Clar). GAL Clar submitted her final report to the trial court on November 10, 2014, in which she recommended that the parties share legal and physical custody of the Child, with the support of a parenting coordinator.

[5] Following a contested hearing on January 30 and February 2, 2015, the trial court issued a final decree of dissolution of marriage on April 1, 2015, awarding Mother and Father joint legal and physical custody of the Child, with Father having extensive parenting time. In addition, the trial court granted Father "the ultimate right to decide whether [the Child] receive recommended vaccinations." (Appellant's App. Vol. II, p. 186). Erin Durnell was appointed as the Parenting Coordinator (PC Durnell), with authority "limited to decisions regarding [the Child's] healthcare, including immunizations, medicine, diet, food, and allergies." (Appellant's App. Vol. II, p. 187). Although the trial

court incorporated a provision for child support, the decree is silent as to any childcare expenses.

[6] Following the trial court's award of joint legal custody, on September 24, 2015, Mother advised Father that she had made an appointment with the Child's dentist for a routine check-up. Although Father initially objected to ongoing treatment with the Child's dentist because Father could receive less expensive dental treatments for the Child at the dentist office where his sister was employed, he allowed the scheduled appointment to proceed. After being seen by the dentist, it was determined that the Child suffered from severe tooth decay and required several root canals. The Child's dentist referred the Child to Dr. Kira Stockton (Dr. Stockton), a pediatric dentist. On November 12, 2015, Dr. Stockton performed an operating room procedure to complete all the necessary dental work in one appointment. In May of 2016, the Child had a routine appointment with Dr. Stockton and was found to do well with his oral hygiene.

[7] On April 15, 2016, PC Durnell issued her first Binding Recommendation following her appointment by the trial court. The primary issue mediated by PC Durnell focused on the Child's immunizations. As a chiropractor, Mother "has long been opposed to immunizations." (Appellant's App. Vol. II, p. 69). "Her professional training and her own experience in directing [the Child's] health from his birth have convinced her that immunizing him is not necessary for maintaining his good health, and that his body is capable of fighting off disease because he is so health[y]." (Appellant's App. Vol. II, p. 71). Father, on the other hand, wished for the Child to be vaccinated. Mindful of both

parties' positions, PC Durnell recommended the Child to be immunized on a delayed schedule, receiving "one (1) injection every four (4) weeks, which is a deviation from the [Center for Disease and Control's (CDC)] catch-up schedule. The parties shall follow [the Child's pediatrician's] recommendations for prioritizing the vaccinations, and shall not argue with [the pediatrician] at any of [the child's] appointments about which injection should be given at that appointment." (Appellant's App. Vol. II, p. 72). Father was responsible for taking the Child to the immunization appointments, while Mother would be permitted to attend. After the Child received his second combination vaccine for diphtheria, tetanus, pertussis, and polio (DTap) on July 21, 2016, the Child developed a swelling at the injection side and was hospitalized overnight at IU North, where he received intravenous antibiotics to treat his reaction.

[8] Father scheduled the child for another DTap vaccination on August 26, 2016. Mother objected based on the CDC's recommended catch-up schedule, which advised a minimum interval of six months between doses of DTap vaccines. Father instead opted to have the Child vaccinated with the combination vaccine for measles, mumps, rubella, and varicella/chickenpox at the August 26, 2016 appointment, again over Mother's objection. Although Father subsequently sought to have the Child injected with the DTap vaccine, he acquiesced against proceeding forward with the appointment after Mother moved to stay the immunization in which she detailed the CDC's recommended guidelines for delayed vaccinations for the Child's age. By May 17, 2017, the parties agreed

that the Child would receive one vaccination when he is eleven and another when he is seventeen.

[9] In March of 2015, Father was arrested and charged with felony battery resulting in serious bodily injury for pushing a neighbor into a door and causing injuries. On October 20, 2016, Father pled guilty and was sentenced to probation for one year. Following his arrest, Father voluntarily attended clinical psychotherapy with Dr. Kevin Byrd, a clinical psychologist (Dr. Byrd). Dr. Byrd counseled Father in anger management and provided guidance with regard to handling co-parenting situations. Father attended thirteen sessions, after which Dr. Byrd declared the therapy to be successful as Father "placed a sincere effort into working on the issues at hand." (Transcript p. 106).

[10] On April 15, 2016, after discovering Father's arrest, Mother filed an emergency motion to modify custody and a motion for a change of judge. On May 2, 2016, a special judge assumed jurisdiction. On June 17, 2016, Mother filed a request for a final hearing, which the trial court scheduled for August 24, 2016. On June 30, 2016, Father filed a motion, requesting the trial court to clarify its prior order with respect to the allocation of work-related childcare expenses and seeking the reappointment of GAL Clar. Because Mother was concerned about possible delays to the proceedings due to a late reappointment of GAL Clar, Mother objected to Father's motion. The trial court appointed GAL Clar over Mother's objection.

[11]    The trial court conducted a hearing on August 24, 2016, November 2, 2016, and May 17, 2017, respectively. On October 13, 2016, Mother filed a motion for rule to show cause after Father refused to reimburse her for uninsured medical expenses in the amount of $1,178.72. On June 8, 2017, the trial court issued its Order, denying Mother's motion for modification of custody, concluding in pertinent part:

> 35. [] The primary dispute between the parties is the issue of [the Child's] vaccinations. Mother objects to vaccinating the [C]hild. Father has concerns about the [C]hild's health absent vaccinations. . . .
>
> 36. While Mother has alleged that Father has made custody and parenting time a battlefield, the [c]ourt believes that Mother's position on vaccinations and her views on a holistic way of life have created a great deal of controversy from which she now seeks an award of sole legal custody. The [c]ourt is not judging the wisdom of Mother's approach to these issues, however, it is her steadfast adherence to the same that have caused many of the legal custodial issues between the parties.
>
> 37. Mother has rejected the recommendations of the GAL. Mother has rejected the recommendations of the PC. Mother has rejected the recommendations of [the Child's pediatrician], at times. It appears that Mother has rejected the [c]ourt's order from the outset. A petition to modify custody is not a vehicle to re-litigate initial custody determination as to who might make a better parent. Mother should not be rewarded for her continued course of action through a modification of custody in her favor. It would appear to the [c]ourt that Mother is indeed trying to re-litigate issues that have already been resolved.

38. Father provided recent examples of issues resolved between the parties through communication and cooperation without involvement of the PC. Specifically, Father and Mother have been able to resolve (1) the most recent "vaccination dispute" as put before the [c]ourt in Mother's second motion to stay and were able to work together with [the Child's pediatrician], to resolve the same much that [the Child] will not receive the DTap vaccination until he is seventeen years old and that the soonest he would receive any additional vaccination is age eleven, and (2) the parties were able to interview and agree upon an orthodontic provider for [the Child] and begin treatment. Further, the GAL Report noted several instances where Father had compromised to resolve an issue.

39. The GAL has recommended that joint legal custody remain in place. The PC supports an order of joint legal custody. The GAL was presented with all co-parenting and custody issues and attended all three days of hearings. The GAL does not believe a modification of legal or physical custody is warranted or in the child's best interest after speaking with the child's professional providers [], and after reviewing documentation that related to Father's criminal conviction.

40. The [c]ourt finds that the issues presented to the [c]ourt as the basis to modify custody are best addressed by reappointment of a PC rather than a modification of custody. While Mother states that such changes or issues are "substantial and continuing," this [c]ourt disagrees.

* * * *

47. Father is a very involved parent. He is informed of various vaccination and medical issues pertaining to [the Child]. He testified about his daily routine with [the Child]. He bathes [the Child] daily and brushes his teeth in the morning and at night.

He uses his best efforts to serve organic and natural food to [the Child], when financially able to do so. He discussed the books he and [the Child] read daily. He testified as to the activities he and [the Child] enjoy together. [The Child] will be eight years old in July of 2017. [The Child] has no siblings. Father has only rescheduled parenting time on approximately five instances since he began his new position with his current employer in October of 2015. Those instances were largely requests by Father to retrieve [the Child] an hour later (or less) at the outset of his parenting time. Father is not required to regularly travel for work. During the pendency of this action, Father relocated from an apartment to a larger permanent residence closer to [the Child's] school.

48. The [c]ourt finds credible Father's report that he is and has been abstaining from alcohol since May 11, 2016 through the present date, based on Father's demeanor, [and] Dr. Byrd's comments . . . . The criminal charges brought against Father [] have been resolved without Father being incarcerated and did not impact the [C]hild as [the Child] was with Mother on the night when the incident occurred. Father indicates the criminal conviction and incident thereto were a "wake up call." Father appears to take ownership of and responsibility for that instance and used the same to better himself.

49. Father voluntarily sought psychotherapy treatment with [Dr. Byrd] at the GAL's recommendation. Mother declined to do so. [Dr. Byrd] testified that at the time of the May 17, 2017 hearing, Father's treatment was not needed past February of 2017, but Father chose to continue with two additional sessions. Dr. Byrd testified that he believed, based upon his treatment of Father, that Father was committed to treatment and invested in the same. Dr. Byrd testified that Father had acknowledged his own shortcomings and used that as an impetus for change in his life. Contrary to Mother's assertions, Dr. Byrd does not have

concerns for Father's anger issues more than "the average person."

50. This [c]ourt believes that Father is committed to parenting [the Child] and that it is in [the Child's] best interest to maintain the current parenting time schedule. Therefore, the [c]ourt denies Mother's request to modify parenting time as Mother has failed to meet her burden that a modification of parenting time is in [the Child's] best interest.

* * * *

55. Father incurred $19,000.00 in attorney fees from April 14, 2016 through the date of the final hearing. Father has incurred a great deal of attorneys' fees and PC fees to address the issue of whether, why, when, what and how the [C]hild will be vaccinated since April 15, 2016. Mother has routinely sought an order from the Court to limit Father's involvement with [the Child] without success. Mother is not agreeable to the GAL recommendations and instead seeks an award of sole legal custody and reduced parenting time for Father. Mother has failed to meet her burden of proof to warrant the modification she seeks.

56. Having considered the respective income of the parties, their overall financial status and the procedure of this case, the [c]ourt orders Mother to reimburse ten thousand dollars of Father's attorneys' fees incurred in litigating this matter. Absent Father's contempt for failing to properly follow the provisions of the Decree regarding medical expenses the [c]ourt would have ordered twelve thousand dollars of fees.

(Appellant's App. Vol. II, pp. 26-27, 29-30, 31).

[12]  Mother now appeals. Additional facts are provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[13] The trial court entered specific findings of fact and conclusions thereon in its Order denying the modification of custody. Pursuant to Indiana Trial Rule 52(A), this court will "not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Jarrell v. Jarrell*, 5 N.E.3d 1186, 1190 (Ind. Ct. App. 2014) (citing *D.C. v. J.A.C.*, 977 N.E.2d 951, 953 (Ind. 2012)), *trans. denied*. Considering only the evidence most favorable to the trial court's judgment and all reasonable inferences derived therefrom, we will find clear error only if the evidence, either directly or by inference, fails to support the findings, or if the findings fail to support the conclusions. *Id.*

[14] In addition, there is a well-established preference in Indiana "for granting latitude and deference to our trial judges in family law matters." *Swadner v. Swadner*, 897 N.E.2d 966, 971 (Ind. Ct. App. 2008). "[A]ppellate courts 'are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *D.C.*, 977 N.E.2d at 956-57 (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)). Our State's courts have long emphasized a concern that there be finality in matters concerning child custody. *Baxendale v. Raich*, 878 N.E.2d 1252, 1258 (Ind. 2008). "Modification of

custody is an area committed to the sound discretion of the trial court, and we are constrained to neither reweigh evidence nor judge the credibility of witnesses." *Joe v. Lebow*, 670 N.E.2d 9, 23 (Ind. Ct. App. 1996).

## II. *Appointment of Guardian Ad Litem*

[15] Mother first contends that the trial court abused its discretion by appointing GAL Clar over her objection. On June 30, 2016, Father requested the re-appointment of GAL Clar, more than two months after Mother filed her emergency motion for modification of custody. Mother objected to the re-appointment, "[g]iven that the final hearing is scheduled on August 24, 2016, Mother believes that appointing a GAL at this stage will likely delay the final hearing, as it is unlikely a GAL could have any investigation and report completed in less than forty-five days." (Appellant's App. Vol. II, pp. 82-83). On July 1, 2016, the trial court appointed GAL Clar over Mother's objection.

[16] Pursuant to Indiana Code sections 31-17-6-2; -3, it is within a trial court's discretion to appoint a GAL, who "shall represent and protect the best interests of the child," in a post-dissolution modification procedure. Upon her appointment, GAL Clar investigated the Child's circumstances, as well as the parties' respective concerns and timely filed a written report with the trial court prior to the hearing. Neither party moved to continue the hearing, thus no

delay occurred. We conclude that the trial court did not abuse its discretion in re-appointing GAL Clar.[1]

### III. *Modification of Legal Custody*

[17] Mother also contends that the trial court abused its discretion by denying her motion for modification of joint legal custody to sole legal custody, and maintains that joint legal custody has become a battlefield and the parties are no longer able and willing to cooperate to advance the Child's welfare.

[18] As with modifications of physical custody, a trial court may not modify legal custody unless (1) the modification is in the best interests of the child and (2) there is a substantial change in one or more of the factors that the court may consider under Indiana Code section 31-17-2-8 when it originally determines custody. These factors are enumerated as:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>> a. The child's parent or parents;
>> b. The child's sibling; and

---

[1] In her appellate brief, Mother argues that "it is clear the GAL was operating with some bias in favor of Father and against Mother." (Appellant's Br. p. 17). However, Mother did not include this argument in her motion objecting to the requested re-appointment of GAL Clar. As a party cannot advance an argument for the first time on appeal, it is waived for our review. *Birkheimer v. Birkheimer*, 981 N.E.2d 111, 120 (Ind. Ct. App. 2012), *reh'g denied*. Similarly, in her statement of issues, Mother contends that the trial court erred "when it ordered Mother to pay [GAL Clar's] fees." (Appellant's Br. p. 4). Nevertheless, nowhere in the argument section of her brief does Mother present this court with her "contentions on the issue[], supported by cogent reasoning." *See* Ind. Appellate Rule 46(A)(8)(a). Accordingly, the issue of GAL Clar's fees is waived for our review.

> c. Any other person who may significantly affect the child's best interests.
> (5) The child's adjustment to the child's:
>   a. Home;
>   b. School; and
>   c. Community.
> (6) The mental and physical health of all individuals involved.
> (7) Evidence of a pattern of domestic or family violence by either parent.
> (8) Evidence that the child has been cared for by a de facto custodian[.]

I.C. § 31-17-2-8. In addition, in evaluating if joint legal custody should be modified, a trial court must consider the factors listed in I.C. § 31-17-2-15:

> (1) the fitness and suitability of each of the persons awarded joint custody;
> (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;
> (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;
> (4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;
> (5) whether the persons awarded joint custody:
>        (A) live in close proximity to each other; and
>        (B) plan to continue to do so; and
> (6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

[19] "In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating the existing custody should be altered." *Kirk v. Kirk*, 770N.E.2d 304, 307 (Ind. 2002). Custody matters typically turn on factual

determinations and will be set aside only if such determinations are clearly erroneous. *Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008). On appeal, it is not enough that the evidence might support some other conclusion; rather, it must positively require the conclusion contended for by appellant before there is any basis for reversal. *Kirk*, 770 N.E.2d at 307. Because a change in circumstances must not only be substantial, as required by the statute, this change "must be judged in the context of the whole environment[.]" *Jarrell*, 5 N.E.3d at 1193. Most importantly, "[t]he effect on the child is what renders a change substantial or inconsequential." *Id*.

[20] Reviewing the familial situation since the institution of joint legal custody on April 1, 2015, Mother advances that there is an "abundance of examples evidencing the conflict between Mother and Father[.]" (Appellant's Br. p. 18). Claiming that "[t]he conflict between Father and Mother is pervasive and not limited to the sole issue of vaccinations or a conflict regarding a holistic approach to life" as concluded by the trial court, Mother focuses on the problems surrounding the Child's dental care. Specifically, while she wanted the Child to continue to see his original dentist, Father objected because he desired the Child to visit the dentist where his sister worked to save costs. The dispute, which delayed the Child's dental care, could have been a contributing factor to the Child's extensive dental problems.

[21] While we acknowledge the disagreements between the parties, we also notice an improvement in their relationship over time. Even though the parties maintain a different lifestyle and initially steadfastly refused to cooperate, the

record now includes examples of issues resolved between the parties through communication and cooperation without the involvement of PC Durnell. Most importantly, the record evidenced that the parties were able to resolve disagreements about the Child's extracurricular activities and the Child's most recent immunization. During the hearing, PC Durnell testified that if the court would award either parent sole legal custody, "an imbalance of power" would be created that would intensify "these battlefields[.]" (Tr. p. 99). She advised that the Child "needs his parents to both be making those decisions for him." (Tr. p. 99).

[22] Considering both parents' viewpoints, GAL Clar opined at the hearing that:

> The parties have differences of opinion. I think when [Father] doesn't acquiesce [Mother] views it as refusal. I think when [Mother] does not acquiesce, [Father] views it as her being difficult. There have been times where [Father] has acquiesced and didn't want to, but he did it. . . . I don't think every single one or every single thing is necessarily an argument.

(Tr. p. 92). GAL Clar advised the trial court to continue the joint legal custody arrangement and expressed her hope that the Child get "some peace" to be "a little normal seven-year old child who grows up and skips and jumps and walks around[.]" (Tr. p. 80).

[23] Whereas the record clearly supports indications of disagreements and arguments between the parties—such as reimbursement for haircuts and expenses, or enrolling the Child in activities and camps—at the same time, it is silent as to "evidence of fundamental differences in child rearing philosophies,

religious beliefs, or lifestyles." *Walker v. Walker*, 539 N.E.2d 509, 513 (Ind. Ct. App. 1989). Although the parents have different lifestyles, they have not shown a disinclination or inability to cooperate in important matters affecting the welfare or the upbringing of the Child. Rather, we see a positive and gradual improvement over time in the parties' willingness to make decisions advancing their Child's happiness. Based on the evidence before us, we conclude that Mother failed to carry her burden to establish a substantial and continuing change of circumstances.

## IV. *Parenting Time*

[24] Next, Mother contends that the trial court abused its discretion in denying her request to modify Father's parenting time such that Father would exercise parenting time pursuant to the Indiana Parenting Time Guidelines. Pointing to Father's use of alcohol, his anger problems, and his recent felony conviction, Mother seeks to reduce Father's generous parenting time to parenting time on alternating weekends with one midweek visit.

[25] Indiana has long recognized that the right of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents, and thus a noncustodial parent is generally entitled to reasonable visitation rights. *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006), *trans. denied*. Accordingly, when a custodial parent seeks to modify a parenting time order, the parent must show that the modification would serve the best interests of the child. I.C. § 31-17-4-2. "However, the court shall not restrict a parent's

parenting time rights unless the court finds that the parenting time might endanger the child's physical health, or significantly impair the child's emotional development." I.C. § 31-17-4-2.

[26] In its detailed Order, the trial court found Father credible "that he is and has been abstaining from alcohol since May 11, 2016, through the present date." (Appellant's App. Vol. II, p. 29). As a credibility determination is within the trial court's province, we will not disturb this conclusion. *Jarrell*, 5 N.E.3d at 1190. During the hearing, Father presented evidence that he acknowledged his anger problems and voluntarily sought counseling. Dr. Byrd, Father's clinical psychologist, testified to the nature of the treatment and Father's successful discharge thereof. He described Father as "a willing and cooperative client all the way through . . . [who] placed a sincere effort into working on the issues at hand." (Tr. pp. 105-06). Father presented the trial court with evidence indicating his involvement with his Child's upbringing. He informed the court of the Child's daily schedule when he is in Father's care and testified as to the activities they share.

[27] Although Mother reiterates several times that Father's felony conviction cannot be viewed in a vacuum, but rather should be considered in the totality of the evidence as establishing a pattern of anger and violence, we disagree with her interpretation of the evidence.[2] Rather, the record establishes a clear pattern of

---

[2] In support of her argument, Mother also relies on I.C. § 31-17-2-8.3 which creates a rebuttable presumption that the trial court "shall order that the noncustodial parent's parenting time with the child must be

improvement on Father's part. Recognizing his anger issues, Father voluntarily enrolled in counseling, he abstained from alcohol, and is genuinely interested and involved in the upbringing of the Child. We agree with the trial court that Mother failed to establish that modification of the current parenting time arrangement is in the Child's best interest.

## V. *Reimbursement of Childcare Costs*

[28] The preliminary order issued October 14, 2013, made Mother "responsible for paying Abacus Child Care Center" and gave her credit for "[w]ork-related [c]hild [c]are [e]xpense" on the child support worksheet. (Appellant's App. Vol. II, pp. 33, 36). The April 1, 2015 dissolution decree was silent as to the payment of work-related childcare costs. However, the decree included the provision that "[a]ny issues not resolved specifically herein by this Order shall be addressed by separate and subsequent Order of this [c]ourt. Pending subsequent Order, the parties' [p]reliminary [o]rder as it pertains to all child-related provisions shall remain in full force and effect." (Appellant's App. Vol. II, pp. 192-93). Father interpreted this provision to mean that the decree required him and Mother to continue to share work-related childcare expenses pro rata based on their respective income shares as was occurring through the child support worksheet credit under the preliminary order. Mother, on the

supervised" if the noncustodial parent has been convicted of a crime involving domestic or family violence that was witnessed or heard by the noncustodial parent's child. We find the statute inapplicable as Father was not convicted of a crime involving domestic or family violence, nor was the incident witnessed or heard by the Child.

other hand, interpreted the decree as requiring each party to provide and pay their own childcare expense. In its Order, the trial court "clarifie[d] the [decree] to note that the parties are ordered to divide any and all work-related childcare costs based upon their respective income shares, with Father paying sixty-five percent (65%) and Mother paying thirty-five percent (35%)." (Appellant's App. Vol. II, p. 24). As such, the trial court ordered Mother to reimburse Father $623.21 "for past work-related childcare expenses." (Appellant's App. Vol. II, p. 24). Mother challenges the trial court's conclusion, maintaining that it constitutes an impermissible retroactive modification of the decree.

[29] It is firmly established that "a court that dissolves a marriage retains jurisdiction to interpret the terms of its decree and decide questions emanating from its decree pertaining to its enforcement." *Fackler v. Powell*, 839 N.E.2d 165, 169 (Ind. 2005). "Although a court may not modify a final decree, it may construe and clarify it in case of uncertainty, in order to sustain the decree, rather than defeat it; however, an order is not merely a clarification where it makes substantial changes in the original decree." *Shepherd v. Tackett*, 954 N.E.2d 477, 482 (Ind. Ct. App. 2011).

[30] Here, the trial court, when faced with the issue of work-related childcare expenses, interpreted the decree's provision that "[p]ending subsequent Order, the parties' [p]reliminary [o]rder as it pertains to all child-related provisions shall remain in full force and effect." (Appellant's App. Vol. II, pp. 192-93). This preliminary order, by way of the attached child support worksheet, divided the childcare expenses pro rata based on the parties' respective income shares.

Even though during the preliminary order childcare was provided by Abacus daycare, whereas it is currently provided by Westfield Washington Schools, there still remains a child-related expense, which needs to be allocated between the parties. As the trial court merely clarified its decree and did not institute a substantial chance, we affirm the trial court's decision with respect to work-related childcare expenses. *See id.*

## VI. *Attorney Fees*

[31] Lastly, Mother challenges the trial court's Order, requiring her to reimburse Father's attorney fees in the amount of $10,000. We review a trial court's award of attorney fees for an abuse of discretion. *G.G.B.W. v. S.W.*, 80 N.E.3d 264, 272 (Ind. Ct. App. 2017). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.*

[32] Pursuant to Indiana Code Section 31-17-7-1, a trial court is permitted to periodically order one parent to pay reasonable attorney fees to the other parent related to maintaining or defending custody and parenting time proceedings. To award fees under this statute, a trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment and earn adequate income, and any other factors bearing on the reasonableness of the award. *Montgomery v. Montgomery*, 59 N.E.3d 343, 354 (Ind. Ct. App. 2016). "Misconduct that directly results in additional litigation expenses may properly be taken into account in the trial court's decision to

award attorney fees." *Allen v. Proksch*, 832 N.E.2d 1080, 1102 (Ind. Ct. App. 2005).

[33] The trial court based its award of Father's attorney fees on Mother's litigious nature, routinely seeking a court order to limit Father's involvement with the Child, as well as her resistance to PC Durnell and GAL Clar's recommendations. In its calculation of the award, the trial court was guided by the "respective incomes of the parties, their overall financial status, and the procedure of this case[.]" (Appellant's App. Vol. II, p. 31). Mindful of the trial court's discretion in this area, we cannot say that the court improperly awarded attorney fees to Father.

## CONCLUSION

[34] Based on the foregoing, we hold that the trial court properly (1) appointed the GAL Clar and allocated her fees to Mother; (2) denied Mother's request for modification of joint legal custody; (3) denied Mother's request for modification of parenting time; (4) clarified its Order with respect to work-related childcare expenses; and (5) awarded attorney fees to Father.

[35] Affirmed.

[36] Baker, J. and Brown, J. concur