# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 12 2020, 6:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth Eichholtz Walker
Becker Bouwkamp Walker, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Katherine A. Harmon
Jenna L. Heavner
Mallor Grodner LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Breelyn Finegan, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Benjamin Finegan, <br> *Appellee-Respondent,* | June 12, 2020 <br><br> Court of Appeals Case No. 19A-DR-2619 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable William J. Hughes, Judge <br><br> Trial Court Cause No. 29D03-1404-DR-3087 |

**Robb, Judge.**

# Case Summary and Issue

[1] The marriage of Breelyn Finegan ("Mother") and Benjamin Finegan ("Father") was dissolved in 2015 with the parties to share joint legal custody of their three children and Mother to have primary physical custody subject to Father's parenting time. In 2019, in addressing petitions to modify custody filed by each parent, the trial court modified the custody order to grant Father sole legal custody of the parties' oldest child, K.F., and Mother sole legal custody of the youngest two children. For purposes of parenting time, Mother was designated the primary physical custodian of all three children. Mother now appeals, raising several issues for our review that we consolidate and restate as one: whether the trial court clearly erred in modifying legal custody of K.F.[1] Concluding the trial court committed no error, we affirm.

# Facts and Procedural History

[2] Mother and Father were married in 2003 and three children were born of the marriage: K.F., born in 2006, J.F., born in 2008, and L.F., born in 2010. Mother filed a petition for dissolution of the marriage in 2014 and a Decree of Dissolution was entered in August 2015. Incorporated into the Decree was a May 2015 agreed order memorializing that Mother and Father had agreed to joint legal custody of the children, with Mother having primary physical

---

[1] The caption on page 1 of the Appealed Order incorrectly spells the parties' last name as "Finnegan." The remainder of the order as well as the other pleadings in this cause use the correct spelling of "Finegan."

custody and Father having slightly modified parenting time. *See* Appellant's Appendix, Volume II at 20, 24.

[3] The parties' post-dissolution relationship has been contentious. *See* Appealed Order at 4 ("The Court finds that the parties do not effectively communicate. There is substantial justification in the [Chronological Case Summary] and the Decree in this cause to indicate that this is not a new circumstance."). In August of 2018, Mother filed a motion seeking appointment of a parenting time coordinator, alleging the "level of conflict between the parties has made it difficult for the parties to effectively co-parent the children" and that she "believes that the parties are unlikely to be able to communicate and cooperate politely and effectively without professional assistance." Appellant's App., Vol. II at 37-38. In September, Father filed a motion seeking to modify custody, parenting time, and child support, alleging that he "believes it is best that the parties share joint legal and physical custody of the parties' minor children" and requesting the court modify custody accordingly. *Id.* at 73. Mother thereafter requested appointment of a Guardian Ad Litem ("GAL") to investigate and report on the various issues before the court. The court granted this motion and Wendy Clar was appointed GAL in November. The parties' pending motions were ultimately set for hearing in September 2019.

[4] The parties' children attend a private Catholic school in Indianapolis. K.F. has special needs, which the Guardian Ad Litem described during these post-dissolution proceedings: "She has cerebral palsy. She has some mental health diagnoses. She has some learning disabilities[.]" Transcript, Volume 2 at 9

(cleaned up). At some point during the 2018-19 school year, the school informed Mother and Father that it would be unable to continue to meet K.F.'s special needs, and the parties undertook to find a new school for K.F. but were ultimately unable to agree on where she should be enrolled. Mother favored a private school; Father favored a public school in the Hamilton Southeastern School District where he lives.

In June 2019, Mother filed a motion seeking to modify custody, alleging there had been a substantial and continuing change in circumstances and it would be in the children's best interest to modify the joint legal custody arrangement. Mother alleged:

> The level of conflict between the parties has made it difficult for the parties to effectively co-parent the children and the parties' conflict is detrimental to the children's best interests. Specifically, the parties are at an impasse regarding which school [K.F.] should attend, and regarding her health care treatment.

Appellant's App., Vol. II at 86. Mother requested that she be granted sole legal custody of the children and given the authority to select K.F.'s school and make healthcare decisions for the children. Father filed a response to Mother's motion in which he requested sole legal custody of the children be granted to him. These motions were also set to be heard at the previously scheduled hearing in September 2019.

The GAL filed her 113-page report with the court in August. The GAL recommended, as relevant to this appeal, that Mother continue to have primary

physical custody of the children, that Mother be granted sole legal custody of the children, and that K.F. be enrolled in the Hamilton Southeastern School District. At the outset of the hearing on September 9, 2019, Mother's counsel summed up her position:

> The most significant but not the only issue of dispute between the parties has to do with school attendance by the parties' eldest daughter, [K.F.] . . . who is a special needs child, high-functioning, autistic, and also medical challenges. And this is a case where, I think, two parents have two different views and neither view is necessarily right. Neither view is necessarily wrong. They are simply different. [Mother], although she does not love all of the recommendations of the [GAL], is prepared to accept all of them as a package and that will be her proposal today.

Tr., Vol. 2 at 5-6 (cleaned up). Father's counsel then summed up his position:

> [Father] has asked for equal time with the children. . . . He does agree that there have been times when the parties have co-parented well and there have been times when the parties have not co-parented well which is not unusual. The biggest issue that's facing them currently, he would agree, would be the school issue with regard to [K.F.]. [M]y client has proposed a public school. He believes that to be in [K.F.'s] best interest [and] he would be requesting the court grant his request to choose the school for the child. He's also requesting that the parties keep joint legal custody. . . . He would be willing to adopt the [GAL's] recommendation with regard to the school, but he doesn't think we're at a point where joint . . . legal custody is just untenable[.]

*Id.* at 6 (cleaned up).

Both parties and the GAL testified at the hearing. Mother testified she was seeking sole legal custody "[b]ecause [Father] and I have issues communicating and . . . coming to decisions for our kids." *Id.* at 40. She acknowledged if she were granted sole legal custody, she would be required to "discuss [issues] with [Father] in good faith [and] take his opinion to heart when trying to come to the decision that [she] think[s] is best for the kids." *Id.* at 41 (cleaned up). Reiterating her counsel's summation, Mother said she agreed with the GAL's recommendations with the exception of school choice but was willing to adhere to all the recommendations including school choice. *Id.*

Father testified that his primary concern if Mother was granted sole legal custody was "that what is carried out is not the wishes of both parents or in the children's best interest." *Id.* at 97. He asked for the court to order K.F.'s school be changed to a junior high in the Hamilton Southeastern School District. He further asked for the court to affirm the joint legal custody arrangement but modify parenting time so that the parties have equal parenting time.[2] And he asked that the court appoint a parenting time coordinator before considering changing legal custody.

Finally, the GAL testified about her report and recommendations. She did not recommend appointing a parenting time coordinator because "[j]oint legal custody is not appropriate for these children. . . . [These children] need peace.

---

[2] This position is a departure from the requests Father made in his second motion to modify custody and from the position discussed by the GAL in her report.

They need to enjoy whatever's left of their childhood. . . . [T]here's no time to go and now try to get along. That time is past. So no, I do not recommend a [parenting time coordinator]." *Id.* at 14. Instead, she recommended sole legal custody to Mother because "there's some sense of calmness at [Mother's]. . . . [A]t the end of the day, because the parties can't get along, [control] can only go to one person. . . . [I]t has to go to the parent who is least likely to continue to facilitate the fire. And in this case, that's mom." *Id.* at 28-29; *see also* Exhibits, Volume 3 at 232 (GAL report stating that in her opinion, "a joint legal custody arrangement is not in the best interest of these children [because t]he parties interacting creates nothing short of a toxic environment for [them]."). She did not believe a change in the physical custody arrangement was warranted. *See* Exhibits Vol. 3 at 235. As for choice of school for K.F., she noted that although the parties disagree about where K.F. should go to school, she did not find either parent's position to be taken in bad faith. She testified that she "took great pains in thinking" about her school recommendation and "wanted to . . . turn over every stone" since the parties could not agree on where to place K.F. Tr., Vol. 2 at 16-17; *see also* Exhibits, Vol. 3 at 234 (GAL report stating she had "implored" counsel to encourage their clients to come to an agreement "rather than have GAL make a recommendation and the Court decide the issue since the parties know their child best. Unfortunately, that was not to be."). The decision "wasn't really close, and it wasn't a slam dunk[; i]t was probably somewhere in the middle[,]" but based on the parties' "hopes and dream[s]" for K.F. and K.F.'s doctor's statement that it would probably be easier and more realistic for K.F. to "transition from public school to real life,"

her recommendation was that K.F. go to public school in the district where Father resides. Tr., Vol. 2 at 16-17.

[10] The trial court took the matter under advisement and issued an order in October 2019. The court found that there has been a substantial change in two specific factors under Indiana Code sections 31-17-2-8 and 31-17-2-15. First, that the wishes of the parties had changed, and they no longer agree that joint custody is in the best interests of their children. And second, that K.F.'s adjustment to her school had changed, and despite "excellent legal advice, sound medical advice, expert educational recommendations, and a sincere plea of the [GAL]," the parties failed to act in K.F.'s best interests to rectify the educational situation and meet K.F.'s educational needs without court intervention. Appealed Order at 7. Accordingly, the trial court made the following finding:

> 12. The [GAL] has recommended that sole legal custody be placed in [Mother] for all three children. The Court finds that this is not in the best interest of [K.F.]. In reviewing the materials submitted by [Mother] at one point she quoted a statute as providing that these children may attend the school in the district where they live or *if agreed* in the other parent's school district.[3] This is an inaccurate quote. It is only where a

---

[3] During the parties' efforts to find a school agreeable to them both, Father suggested looking at Zionsville Schools because he owned a home there. Mother responded (via email):

> [T]he children cannot attend Zionsville Schools because neither you nor I live there. Further, the property you own is for sale, and the home in Fishers where you live is not for sale. According to Indiana Code § 20-26-11-2 and -2.5, the children may attend

custodial parent elects, with elections made annually, that a child may attend the school in a district where the non-custodial parent resides. Adopting the GAL recommendation as to custody of [K.F.] would annualize the very same school choice issues that have stymied these parties since the Fall of 2018. Granting sole legal custody of [K.F.] to Mother would permit Mother to remove [K.F.] from Hamilton Southeastern Schools and relocate her without the consent or input from Father. Therefore, the Court finds and orders that Father shall be awarded sole legal custody of [K.F.] and Mother shall be awarded sole legal custody of [J.F.] and [L.F.]. For the purposes of application of the Parenting Time Guidelines for Holiday and special breaks parenting time only, Mother shall be designated as the primary physical custodian of all three children.

*Id.* at 9-10. The trial court also made modifications to parenting time, set restrictions and requirements on communications between the parties, and modified Father's child support obligation, among other things. Mother appeals only the trial court's finding regarding legal custody of K.F.

# Discussion and Decision

---

school in the school district where I live, or if you and I both agree, they may attend school in the school district where you live.

Exhibits, Vol. 3 at 93. It is Mother's statement in this email to which the trial court refers.

# I.  Standard of Review

A modification of custody is a determination that rests in the sound discretion of the trial court.  *Jarrell v. Jarrell*, 5 N.E.3d 1186, 1190 (Ind. Ct. App. 2014), *trans. denied*.  When reviewing the trial court's decision, we may neither reweigh the evidence nor judge the credibility of witnesses.  *Id*.  Instead, we review custody modifications for an abuse of discretion "with a preference for granting latitude and deference to our trial judges in family law matters."  *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011), *trans. denied*.  We grant this latitude and deference because it is the trial court that observes the parties' conduct and demeanor and hears their testimony firsthand.  *In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied*.  We consider only the evidence favorable to the trial court's judgment and all reasonable inferences derived from it.  *Id*.  "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal."  *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002).  It is not impossible to reverse a trial court's decision regarding child custody on appeal, but given our deferential standard of review, it is relatively rare.  *See Montgomery v. Montgomery*, 59 N.E.3d 343, 350, 354 (Ind. Ct. App. 2016), *trans. denied*.

According to the record before us, neither party filed a Trial Rule 52(A) written request with the trial court for special findings and conclusions thereon.  We therefore treat the trial court's order as sua sponte findings of fact.  *Estudillo v. Estudillo*, 956 N.E.2d 1084, 1089 (Ind. Ct. App. 2011).  Sua sponte findings

control only as to the issues they cover, and a general judgment standard will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Id*. When a court has made special findings of fact, we review sufficiency of the evidence using a two-step process. *Id*. First, we must determine whether the evidence supports the trial court's findings of fact. *Id*. Findings are clearly erroneous when there are no facts to support them either directly or by inference. *Bettencourt v. Ford*, 822 N.E.2d 989, 997 (Ind. Ct. App. 2005). Second, we must determine whether those findings of fact support the trial court's judgment. *Yanoff*, 688 N.E.2d at 1262. "We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." *Baxendale v. Raich*, 878 N.E.2d 1252, 1257-58 (Ind. 2008).

## II. Change of Legal Custody

[13] Mother's argument on appeal is two-fold. She primarily claims that finding #12 of the trial court's order, which was the basis for the modification of legal custody, is clearly erroneous because it is not supported by the evidence. She also briefly claims the trial court applied the wrong legal standard in reaching its decision. We will address the appropriate legal standard for modifying legal custody first.

# A. Legal Standard

Legal custody refers to the authority and responsibility for making major decisions regarding a child's upbringing, including decisions about education, health care, and religious training. *See* Ind. Code § 31-9-2-67. *Joint* legal custody, which means the parents share that authority and responsibility, is appropriate when the parties are willing and able to communicate and cooperate for the benefit of the child's welfare. *Carmichael v. Siegel,* 754 N.E.2d 619, 635 (Ind. Ct. App. 2001); *see* Ind. Code § 31-17-2-15(2). When the parents have made child-rearing a battleground and cannot work together, joint legal custody is not appropriate. *Milcherska v. Hoerstman*, 56 N.E.3d 634, 642 (Ind. Ct. App. 2016).

The statute governing modification of child custody states in relevant part:

> (a) The court may not modify a child custody order unless:
>
> > (1) the modification is in the best interests of the child; and
> >
> > (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 . . . of this chapter.
>
> (b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

Ind. Code § 31-17-2-21. However, when considering a modification from joint legal custody to sole legal custody, the trial court must also consider whether

there has been a substantial change in one or more of the factors found in Indiana Code section 31-17-2-15, the factors to be considered by the trial court in initially determining whether an award of joint legal custody would be in the best interests of the child. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1259-60 (Ind. Ct. App. 2010).

[16] The factors to be considered in this case concerning modification of joint legal custody, then, are those found in Indiana Code section 31-17-2-8 ("Section 8"):

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parent or parents;
>>
>> (B) the child's sibling; and
>>
>> (C) any other person who may significantly affect the child's best interests.
>
> (5) The child's adjustment to the child's:
>
>> (A) home;
>>
>> (B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.[4]

And those found in Indiana Code section 31-17-2-15 ("Section 15"):

(1) the fitness and suitability of each of the persons awarded joint custody;

(2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

(A) live in close proximity to each other; and

(B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

---

[4] Three additional factors are omitted as they are not relevant in this case.

Particularly relevant to whether a court should modify joint legal custody to sole legal custody is whether there has been a substantial change in one or more of the factors the trial court considered when making the initial award of joint custody – that is, those factors enumerated in Section 15. *Julie C.*, 924 N.E.2d at 1260. Moreover, the second factor under Section 15 (parental cooperation) is of particular importance in making legal custody determinations. *Id.*

[17] Mother contends the trial court's decision was based on an erroneous legal standard because it was primarily based on a factor outside those enumerated in Sections 8 and 15 and therefore failed to properly consider the best interests of the child. A judgment is clearly erroneous if it relies on an incorrect legal standard. *T.R. v. E.R.*, 134 N.E.3d 409, 414 (Ind. Ct. App. 2019).

[18] Here, the trial court acknowledged that the standard for modifying legal custody is best interests of the child plus a substantial change in one or more of the factors in Sections 8 and 15. *See* Appealed Order at 4 (Finding #5) and 5 (Finding #7). Although the trial court only made specific findings that there had been a substantial change in one Section 15 factor (whether the parties are willing and able to communicate and cooperate) and one Section 8 factor (K.F.'s adjustment to her school), it was not required in this case to enter a finding as to each factor it considered. *See Russell v. Russell*, 682 N.E.2d 513, 515 (Ind. 1997) ("Although a court is required to consider all relevant factors in making its determination [about a motion to modify custody], it is not required to make specific findings."). Such findings are only required if requested in writing pursuant to Indiana Trial Rule 52(A), *id.* at 515 n.2, and as we have

already noted, neither party made such a request. Moreover, because the trial court did not modify physical custody, many of the Section 8 factors did not come into play (for instance, K.F.'s interaction and interrelationship with her parents and siblings and her adjustment to her home are not considerations because they were not going to be significantly impacted by the trial court's decision). Finally, the trial court made a specific finding that joint legal custody is not in the best interests of the children and explained that its order was "trying to find a way to address the best interests of the minor children in the circumstances in which this Court finds them." Appealed Order at 9 (Finding #9).

[19] To the extent Mother argues the trial court's decision was in error because it was based on consideration of something other than the statutory factors, the Section 8 factors are not exclusive. *Baxendale*, 878 N.E.2d at 1254-55. The trial court must consider *all* factors relevant to making a custody determination. *Id.*; Ind. Code § 31-17-2-8. In addition, under Section 15, the court is to "consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody[,]" and it is clear these parties no longer agree. The trial court applied the correct legal standard in making its determination.

## B. Modification of Legal Custody

[20] Mother's primary argument is that Finding #12, which modified joint legal custody of all three children to split sole legal custody, is not supported by the evidence.

First, we address Mother's contention that it is "unprecedented" to split custody in the way the trial court did. Brief of Appellant at 25. We agree it is unusual, but it is not "unprecedented." For instance, in *Hecht v. Hecht*, 142 N.E.3d 1022 (Ind. Ct. App. 2020), a case with facts markedly similar to these, the parties shared joint legal and physical custody of their two children. The youngest child had special medical and educational needs. Both parents filed motions to modify custody, seeking sole legal and physical custody of the children. The trial court found no grounds to change legal or physical custody of the oldest child or physical custody of the youngest, but found that Mother should be granted sole legal custody of the youngest child because the evidence showed the parties were unable to agree and make timely decisions for her, and her medical condition required a decision maker. We affirmed, holding there was ample evidence that the parents were unable to communicate and co-parent effectively regarding matters related to the child's educational and medical needs. *Id.* at 1033; *see also Gonzalez v. Gonzalez*, 893 N.E.2d 333, 336-37 (Ind. Ct. App. 2008) (determining that, although the particular joint legal custody arrangement was unusual, the trial court did not abuse its discretion in initially granting father legal and physical custody of two children, mother legal and physical custody of two children, and granting mother physical custody and father legal custody of two children). Thus, there is indeed legal precedent for this unorthodox arrangement, provided the reason is stated and supported by the evidence. *See In re Paternity of B.D.D. and B.D.D.*, 779 N.E.2d 9, 14 (Ind. Ct. App. 2002) (noting, in the context of one parent being granted physical and legal custody of one child and the other parent being granted physical and legal

custody of the other, that "[o]rders splitting custody have been upheld and are not a *per se* abuse of discretion in Indiana," although as always, the best interests of the children is the paramount consideration).

[22] Next, we address Mother's argument that the trial court's decision to grant Father sole legal custody of K.F. was based solely on speculation concerning future school choice for K.F. The trial court noted in its order that accepting the GAL's recommendation to grant Mother sole legal custody of all three children but ordering K.F.'s attendance at a school in Father's school district would "annualize the . . . same school choice issues that have stymied these parties" for over a year. Appealed Order at 10 (Finding #12). Indiana Code section 20-26-11-2.5(a) states that in the case of a child of divorced parents, the parent granted physical custody "may elect for the student to have legal settlement in the school corporation whose attendance area contains the residence" of either the child's mother or the child's father. Such election is to be made on a yearly basis. Ind. Code § 20-26-11-2.5(b). If the custodial parent does not make an election, "the legal settlement of the student is the school corporation whose attendance area contains the residence of the parent granted physical custody by the court order." Ind. Code § 20-26-11-2(3). Thus, as the physical custodian, Mother would have to make the annual election for K.F. to attend Hamilton Southeastern Schools and if she did not, K.F.'s attendance would revert to Mother's school district. Mother asserts the trial court's decision was based on one comment she made in a different context and speculation that if given sole legal custody she would change K.F.'s school at

the first opportunity or hold the decision captive annually, an erroneous supposition considering she accepted the GAL's recommendation at the hearing. However, given the documented lack of productive communication and agreement between the parties, the trial court was justified in using their past behavior to inform its decision, and their past behavior indicates the children "have been recruited and used as ammunition in this cause[.]" Exhibits, Vol. 3 at 233 (GAL's report). There is no reason to expect that would change in the future. Moreover, Mother's "agreement" to the GAL's recommendation came at the last possible moment and was based in part on the GAL recommending that Mother have sole legal custody of all three children.

[23] Finally, Mother contends that the trial court could have entered a "less extreme" order than granting Father sole legal custody of K.F., such as awarding Mother sole legal custody as recommended by the GAL and simply ordering that K.F. be enrolled and remain enrolled at Hamilton Southeastern or granting Father legal custody of all three children as to educational decisions and Mother legal custody for other decisions. Br. of Appellant at 39. She argues the trial court's order to split legal custody of the children is not in their best interests because it does not consider K.F.'s non-educational needs, such as her mental/physical health, her religious upbringing, and her medications and medical treatment, nor does it consider "continuity in decision making" for all the children. *Id.* However, the fact that the trial court's order focuses on making the decision the parties utterly failed to make themselves for the benefit of their child – who *could not* continue in the school she had been attending and

for whom Mother and Father *still* could not agree on a new school – does not mean the trial court did not consider all facets of the decision. In addition, as Father points out, "K.F.'s best interests [are] distinct from J.F.['s] and L.F.['s]." Appellee's Brief at 19. It was the parties' own conduct that made this the primary issue to be resolved by the trial court.

[24] In short, there was ample evidence that the parties could not cooperate in co-parenting their children and that a change from joint legal custody was necessary. As the trial court noted, both parties filed a motion to modify custody to sole legal custody and the failure of joint legal custody "may be the only significant factor in this cause upon which these parties do agree." Appealed Order at 6. Moreover, the order that Father have sole legal custody to settle the educational choice for K.F. is supported by the testimony and lengthy and thorough report of the GAL regarding which school would be a better placement for K.F.[5] Although the trial court did not accept the entirety of the GAL's recommendation, it is not required to, *see Clark v. Madden*, 725 N.E.2d 100, 109 (Ind. Ct. App. 2000), nor is it precluded from making an order different from the proposals advanced by the parties, *Richardson v. Richardson*, 34 N.E.3d 696, 704 (Ind. Ct. App. 2015) (holding the trial court did not abuse its discretion in entering a custody arrangement not requested by the parties).

---

[5] Approximately twenty pages, or roughly one-fifth, of the GAL's report had to do with the children's schooling.

The trial court accepted the GAL's school choice recommendation and enacted the arrangement most likely to enable that.

[25] In custody disputes, the trial court "is often called upon to make Solomon-like decisions in complex and sensitive matters." *Trost–Steffen v. Steffen*, 772 N.E.2d 500, 509 (Ind. Ct. App. 2002) (citations omitted), *trans. denied*. The trial court is in a position to see the parties, observe their conduct and demeanor, and hear their testimony; therefore, its decision receives considerable deference in an appellate court. *Id.* Giving the trial court the appropriate deference, we conclude the trial court's modification of legal custody of K.F. is supported by the evidence and the judgment is not clearly erroneous.

# Conclusion

[26] The trial court applied the proper legal standard in determining legal custody of the parties' children and did not abuse its discretion in modifying legal custody. We affirm the trial court's order.

[27] Affirmed.

May, J., and Vaidik, J., concur.